[No. B176701. Second Dist., Div. Five. Aug. 9, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
CEDRIC EARL HILL, Defendant and Appellant.

**COUNSEL**

William J. Capriola, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Lance E. Winters, Lawrence M. Daniels and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.

---

**OPINION**

**KRIEGLER, J.**—A jury convicted defendant Cedric Earl Hill on two counts of attempted voluntary manslaughter in violation of Penal Code[1] sections 664 and 192, subdivision (a), one count of possession of a firearm by a felon in violation of section 12021, subdivision (a)(1), and two counts of assault with a semiautomatic firearm in violation of section 245, subdivision (b). The trial court found that defendant had suffered a prior felony conviction within the meaning of sections 667, subdivisions (b)–(i), 1170.12, subdivisions (d)–(i) (the "Three Strikes" law), and 667, subdivision (a).

Defendant was sentenced on July 1, 2004, to 28 years four months in state prison calculated as follows: for one of the assaults, the upper term of nine years, doubled pursuant to the Three Strikes law, plus five years (§ 667, subd. (a)); for the second assault, a consecutive term of four years; and for the felon in possession count, a consecutive term of one year four months.

---

[1] All statutory references are to the Penal Code, unless otherwise noted.

Sentences on the attempted voluntary manslaughter counts were stayed pursuant to section 654.

In this timely appeal, defendant argues (1) the trial court erred in denying his *Pitchess*[2] motion without conducting an in camera review of the officers' personnel files, (2) the trial court committed reversible error by refusing to instruct on perfect self-defense, and (3) the upper term and consecutive sentences imposed violated defendant's Sixth Amendment right to a jury trial under *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531] (*Blakely*).

■ We hold that allegations by a defendant which merely contradict the statements of civilian witnesses are not sufficient to establish good cause for discovery of information relevant to dishonesty in officers' personnel files. (2) We also conclude defendant was not entitled to have the jury instructed on perfect self-defense, because there was no substantial evidence to support the instruction. We reject defendant's sentencing contention based on the recent holding of the California Supreme Court in *People v. Black* (2005) 35 Cal.4th 1238 [29 Cal.Rptr.3d 740, 113 P.3d 534]) that California's determinate sentencing scheme does not implicate the Sixth Amendment. We affirm the judgment.

## STATEMENT OF FACTS

On the evening of January 6, 2004,[3] Officers Charles Hicks and John Banuelos were working undercover on a special detail assigned to investigate burglaries from motor vehicles and vehicle thefts. The officers were in an unmarked vehicle wearing police raid jackets with their police badges on chains around their necks. As the officers drove on 134th Street near Menlo Avenue, Officer Hicks noticed two men walk into the street and look in the officers' direction. One of the men talked on a cell phone. Officer Banuelos saw the two men chase after the unmarked vehicle. Concerned for their safety, the officers drove to 132nd Street, where they parked and exited their vehicle so they could be recognized as peace officers. They positioned themselves near a short block wall.

Approximately 30 seconds later, defendant drove up in his white Caprice[4] with his girlfriend Celina Shipp, Sheri Pellum,[5] and a man named Fro. The

---

[2] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305] (*Pitchess*).

[3] All the dates are in 2004, unless otherwise indicated.

[4] Officer Hicks had often seen the white Caprice, which was registered to defendant, at the residence of 816 West 129th Street, where Lee Longmire and his family lived. The residence was known to be a location where narcotics were sold.

[5] As will be seen, *post*, Pellum was referred to in the police report as Sheri Tremble-Pellum.

officers identified themselves as police officers and held out their badges with their guns drawn. Pellum saw Officers Hicks and Banuelos, but did not know they were police officers, and noticed that one of them had a pistol pointed in the direction of the Caprice. Defendant sped off westbound on 132nd Street. The officers ran to their car for their safety and contacted other officers to advise them of the situation.

Defendant told the passengers that they needed to get a "gat," meaning a gun. A minute or so later, he pulled over, and someone handed an object through the window to defendant, which Pellum believed to be a handgun. Defendant drove around the corner, again coming upon the officers' car near 130th Street and Menlo. Defendant stopped and got out of the car with Fro. Pellum saw defendant extend his arm and fire shots in the direction of the officers' vehicle.

Officer Banuelos saw a muzzle flash and heard a bullet strike the windshield of the officers' vehicle. He fired four shots in response from his .45-caliber handgun. Pellum heard four or five gunshots, one of which struck the back window of the Caprice. Pellum assumed the initial shots she heard were fired in the direction of the Caprice. Pellum never saw Fro with a gun.

The officers took cover behind a brick wall and called for assistance. Defendant and Fro ran off. Shipp took control of the Caprice and drove off with Pellum toward El Segundo Boulevard. The women were stopped and taken into custody.

Sergeant Richard Boyle heard a radio broadcast indicating an officer needed assistance and suspects were fleeing on foot and by car. He detained several people, including defendant and Longmire, at the corner of 129th Street and Vermont, which was one block from the location of the shooting. Officers Hicks and Banuelos examined the detainees. Officer Hicks identified defendant as the driver of the Caprice at the first encounter on 132nd Street. Neither officer could identify the shooter or the shooter's companion.

Three spent .380-caliber casings were found near the corner of 129th Street and Menlo, and four .45-caliber casings were found near the officers' vehicle. Early the following morning, the .380-caliber semiautomatic handgun used in the shooting was recovered from a makeshift glove compartment of a truck parked in the backyard of the Longmire residence at 816 West 129th Street, the same location where Officer Hicks had often seen defendant's white Caprice.

Defendant made a tape-recorded statement on the morning of January 7. Defendant said he had left his car parked on the street with the keys in the ignition. He was not involved in the shooting, nor did anyone point a gun at him the previous night. Defendant never said he shot at men he believed to be rival gang members, nor did he say he fired shots because he thought his life was in danger.

## DISCUSSION

## I

## THE TRIAL COURT PROPERLY DENIED DEFENDANT'S *PITCHESS* MOTION

Defendant contends the trial court[6] erred in denying his motion to compel discovery of the personnel files of Officers Hicks, Banuelos, and Sergeant Boyle pursuant to *Pitchess*, without holding an in camera hearing to review the files. We conclude that defense counsel's declaration in support of the *Pitchess* motion was inadequate on its face to justify discovery of Sergeant Boyle's personnel records. We further hold that under the facts of this case, in which defendant was identified and implicated by civilian witnesses rather than by Officers Hicks or Banuelos, there was no good cause for discovery of the officers' personnel files.

Prior to trial, defendant filed a motion pursuant to *Pitchess* seeking discovery of personnel records of Officers Banuelos, Hicks, and Sergeant Boyle. Defendant sought disclosure of misconduct by the officers, including evidence of dishonesty.[7] The motion was supported by a declaration from defense counsel, which first set forth a description of the events before, during, and after the shooting. Defense counsel then asserted: "The officers['] report is false. [Defendant] did not possess a gun nor did he point a gun at

---

[6] The ruling on the pretrial *Pitchess* motion was made by Judge Ruffo Espinosa, Jr. Judge Espinosa did not preside over defendant's trial, which was assigned to Judge Tricia Ann Bigelow.

[7] Defendant's written *Pitchess* motion sought discovery of a laundry list of categories of evidence—including "excessive force, bias, dishonesty, coercive conduct, or acts constituting a violation of the statutory or constitutional rights of others"—but in the trial court and on appeal, defendant focuses only on discovery of prior acts of dishonesty by the officers. A request for information that is irrelevant to the pending charges does not satisfy the specificity requirement. (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1022 [29 Cal.Rptr.3d 2, 112 P.3d 2]; see *People v. Hustead* (1999) 74 Cal.App.4th 410, 416 [87 Cal.Rptr.2d 875] [prior complaints of excessive force by arresting officer "irrelevant" after charge of resisting arrest was dropped and remaining charge was evasion of arrest in an automobile].) We conclude defendant's request for discovery of matters other than officer dishonesty has (1) been abandoned, and (2) fails to meet the requirement of specificity.

Officers Hicks and Banuelos. He did not fire a weapon. [Defendant] was in the front yard of 816 West 129th Street and his vehicle was parked in front. He was hanging out with some friends when he decided to walk to the liquor store to buy some cigarettes. As he was walking to the liquor store, he heard some gun shots. The police stopped him shortly thereafter. He was not involved in the shooting."

The police report attached to defendant's *Pitchess* motion contains the following pertinent paragraph implicating defendant: "The two suspects in the Chevy were identified as Salina Shipp and Sheri Tremble-Pellum. They stated they were in the white Chevrolet Caprice with [defendant] and a person they knew only as 'Fro.' They said that as they were driving through the neighborhood they observed a vehicle with two males inside. [Defendant] said he did not recognize the car and thought the males were from another area. (Note: According to Shipp and Tremble-Pellum no one in their car knew the males were police officers.) After the suspects saw the males on 132nd Street they drove to 816 West 129th Street and retrieved a handgun from an unknown person. The suspects left 816 West 129th Street and drove south on Menlo Avenue from 129th Street. The suspects saw the same car with the two males they had just seen minutes earlier. [Defendant], who was driving, stopped the vehicle. When the vehicles stopped both [defendant] and 'Fro' exited the car. [Defendant] exited the driver door while 'Fro' exited the right rear passenger door. According to Tremble-Pellum, [defendant] had the gun when he exited the car. Shipp and Tremble-Pellum heard several gunshots and ducked low in the car. After the shooting, Shipp, who was initially in the front passenger seat, slid over to the driver seat and while sitting low in the vehicle began to drive the vehicle backwards in a fast manner. Shipp stated she just wanted to get out of the area, as she was afraid she was going to get shot."

■ The decision in *Pitchess* established that a criminal defendant could compel discovery of relevant information in the personnel files of police officers by making general allegations which establish some cause for discovery of that information and by showing how it would support a defense to the charge against him. (*Pitchess, supra,* 11 Cal.3d at pp. 536–537.) The holding of *Pitchess* has been codified in sections 832.7 and 832.8 and in Evidence Code sections 1043 through 1045. (*City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, 9 [124 Cal.Rptr.2d 202, 52 P.3d 129].) Evidence Code section 1043, subdivision (b)(3) provides that to obtain discovery, a defendant must file a motion supported by affidavits showing "good cause for the discovery." There are two elements to the required showing: first, the defendant must establish the materiality of the information; and second, the defendant must state a reasonable belief that the police agency has the records or information at issue. This two-part showing of good cause is a relatively low threshold for discovery. (*Warrick v. Superior Court, supra,* 35 Cal.4th at

p. 1019, (*Warrick*); *City of Santa Cruz v. Municipal Court* (1988) 49 Cal.3d 74, 83 [260 Cal.Rptr. 520, 776 P.2d 222].)

■ The California Supreme Court has recently addressed the "first part of the good cause requirement—the materiality to the pending litigation of the discovery sought." (*Warrick, supra*, 35 Cal.4th at p. 1016.) "Specifically, the question is this: What must the defendant show to warrant the court's in-chambers review of documents or information in the officer's personnel file that is potentially relevant to the claimed misconduct? We hold that to obtain in-chambers review a defendant need only demonstrate that the scenario of alleged officer misconduct could or might have occurred." (*Ibid.*)

To the extent defendant's motion asks for discovery of the personnel records of Sergeant Boyle, the declaration of counsel makes no reference to any allegedly false statements by Sergeant Boyle. Defense counsel's declaration makes the following reference to Sergeant Boyle: "Sergeant Boyle observed three males and two females at 129th Street and Vermont Avenue. They were all detained. One of the men was [defendant]." There is no allegation that Sergeant Boyle did not see and detain the individuals as described, nor is there any suggestion he did not detain defendant. Sergeant Boyle was not alleged to be a percipient witness to the shooting. We find no basis for discovery of Sergeant Boyle's personnel records based upon this showing. Accordingly, we now turn to the trial court's denial of the *Pitchess* motion as to Officers Hicks and Banuelos.

The trial court denied the *Pitchess* motion as to Officers Hicks and Banuelos on the basis that defense counsel's declaration failed to discuss the fact that the police reports contained statements from two civilian witnesses in defendant's car who said defendant had a gun. The trial court noted that although Officer Hicks had seen defendant driving the car earlier in the evening, only Officer Banuelos saw muzzle fire and neither Officer Hicks nor Officer Banuelos was able to see or identify the shooter. The trial court observed there was no allegation in the *Pitchess* motion that Officers Hicks and Banuelos fabricated what the civilian witnesses had to say about defendant being in the car and possessing a gun. Defense counsel suggested the witnesses' statements implicating defendant were "self-serving."

■ As noted above, defendant's *Pitchess* motion was based upon a declaration of defense counsel which relied, in turn, on defendant's denial of involvement and the attached police reports. *Warrick* describes the analysis of a *Pitchess* motion based upon a declaration by counsel combined with a police report as follows: "In other cases, the trial court hearing a *Pitchess* motion will have before it defense counsel's affidavit, and in addition a police report, witness statements, or other pertinent documents. The court then

determines whether defendant's averments '[v]iewed in conjunction with the police reports,' and any other documents suffice to 'establish a plausible factual foundation' for the alleged officer misconduct and to 'articulate a valid theory as to how the information sought might be admissible' at trial. [Citation.] Although a *Pitchess* motion is obviously strengthened by a witness account corroborating the occurrence of officer misconduct, such corroboration is not required. What the defendant must present is a specific factual scenario of officer misconduct that is plausible when read in light of the pertinent documents. [Citations.]" (*Warrick, supra*, 35 Cal.4th at p. 1025.)

We conclude the trial court was correct in denying defendant's *Pitchess* motion because defendant did not demonstrate "a specific factual scenario of officer misconduct that is plausible when read in light of the pertinent documents." (*Warrick, supra*, 35 Cal.4th at p. 1025.) A review of the police report in the instant case reveals that the evidence of defendant's identification as a participant in the charged offenses came from two civilian witnesses and not from the officers.

The trial court properly recognized that defendant's showing in support of his *Pitchess* motion established only that there was a factual dispute between defendant's version of events and that of Shipp and Pellum. The trial court was also correct in discerning that the percipient officers—Hicks and Banuelos—did not identify defendant as one of the two males who exited the Caprice at the time of the shooting. There was no allegation in the *Pitchess* motion or counsel's supporting declaration that the shooting did not occur or that it was described inaccurately by Officers Hicks and Banuelos. Most importantly, there is no suggestion in defense counsel's declaration that Officers Hicks and Banuelos interviewed Shipp and Pellum, or that these officers falsified the witnesses' statements. Defendant's showing was insufficient to satisfy the materiality aspect of *Pitchess*.

■ "To determine whether the defendant has established good cause for in-chambers review of an officer's personnel records, the trial court looks to whether the defendant has established the materiality of the requested information to the pending litigation. The court does that through the following inquiry: Has the defense shown a logical connection between the charges and the proposed defense? Is the defense request for *Pitchess* discovery factually specific and tailored to support its claim of officer misconduct? Will the requested *Pitchess* discovery support the proposed defense, or is it likely to lead to information that would support the proposed defense? Under what theory would the requested information be admissible at trial? If defense counsel's affidavit in support of the *Pitchess* motion adequately responds to these questions, and states 'upon reasonable belief that the governmental agency identified has the records or information from the records' (§ 1043,

subd. (b)(3)), then the defendant has shown good cause for discovery and in-chambers review of potentially relevant personnel records of the police officer accused of misconduct against the defendant." (*Warrick, supra,* 35 Cal.4th at pp. 1026–1027.)

While a defense that defendant was not involved in the shooting was a possibility at the pretrial stage, defendant's *Pitchess* request did not meet the test of specificity in that there was no connection between the officers' conduct and the statements of Shipp and Pellum, which identified defendant's role in the charged offense. There is no plausible theory that prior incidents of officer dishonesty would be admissible at trial to refute an identification of defendant as the shooter, because no such identification was made by the officers.

We also point out that there was no dispute at trial that the shooting took place. Defendant has never suggested that there was no shooting at the officers; indeed, such an argument would have been preposterous in light of the totality of the evidence, including the bullet that struck the windshield of the officers' vehicle, the casings recovered at the scene from both Officer Banuelos's firearm and the .380 semiautomatic handgun recovered from the truck on Longmire's property, along with the statements from the various witnesses. The proposed discovery would not have supported the defense that defendant was not a participant in the incident, because his involvement was proven through evidence other than the testimony of Officers Hicks and Banuelos.[8]

Simply stated, defendant's *Pitchess* motion did not satisfy the criteria set forth in *Warrick.* Counsel's affidavit did not establish "a factual scenario supporting the claimed officer misconduct." (*Warrick, supra,* 35 Cal.3d at p. 1024.) The trial court properly denied the *Pitchess* motion.

---

[8] We further conclude any error in denying the *Pitchess* motion was harmless. The defense at trial was not that the officers were dishonest about the shooting taking place, but instead there was insufficient evidence of identification of defendant as a participant in the charged offenses. Defense counsel stressed the lack of identification during argument to the jury by stating: "Because this can I say, at the time of the shooting both officers are not able to identify anybody. They're not putting him at the scene of the shooting." Counsel continued: "At the shooting neither officer identifies [defendant]." Any evidence of officer dishonesty that possibly might have been discovered would not have impacted the issue of identification, which as noted above relied upon evidence from sources other than the testimony of Officers Hicks and Banuelos.

# II

## THE TRIAL COURT DID NOT COMMIT ERROR BY REFUSING TO INSTRUCT ON SELF-DEFENSE

Defendant next contends the trial court committed reversible error by refusing to instruct the jury on the principle of perfect self-defense. Defendant reasons that denial of self-defense instructions usurped the jury's role as fact finder, deprived defendant of his Sixth Amendment right to a jury trial, and was prejudicial under federal and state constitutional law. He also argues that because the jury was instructed on imperfect self-defense, the trial court was obligated to also instruct on perfect self-defense. We conclude the trial court properly denied the request for perfect self-defense instructions, as there was no substantial evidence to support the theory at trial.

■ "A trial court has no duty to instruct the jury on a defense—even at the defendant's request—unless the defense is supported by substantial evidence." (*People v. Curtis* (1994) 30 Cal.App.4th 1337, 1355 [37 Cal.Rptr.2d 304].) "In other words, '[t]he court should instruct the jury on every theory of the case, but only to the extent each is supported by substantial evidence.' [Citation.]" (*People v. Flannel* (1979) 25 Cal.3d 668, 685 [160 Cal.Rptr. 84, 603 P.2d 1].) "If the evidence should prove minimal and insubstantial, however, the court need not instruct on its effect." (*Id.* at p. 684, fn. omitted.) Instructions only need be given where the "evidence [is] substantial enough to merit consideration." (*Id.* at p. 684, fn. 12.) A trial court's refusal to instruct on perfect self-defense will be upheld on appeal where the record contains no substantial evidence to support the instructions. (*People v. Rodriguez* (1997) 53 Cal.App.4th 1250, 1270 [62 Cal.Rptr.2d 345]; *People v. De Leon* (1992) 10 Cal.App.4th 815, 824–825 [12 Cal.Rptr.2d 825] (*De Leon*).)

■ The California Supreme Court has explained self-defense as follows: "For killing to be in self-defense, the defendant must actually and reasonably believe in the need to defend. [Citation.] If the belief subjectively exists but is objectively unreasonable, there is 'imperfect self-defense,' i.e., 'the defendant is deemed to have acted without malice and cannot be convicted of murder,' but can be convicted of manslaughter. [Citation.] To constitute 'perfect self-defense, i.e., to exonerate the person completely, the belief must also be objectively reasonable. [Citations.] As the Legislature has stated: '[T]he circumstances must be sufficient to excite the fears of a reasonable person . . . .' [Citations.] Moreover, for either perfect or imperfect self-defense, the fear must be of imminent harm. 'Fear of future harm—no matter how great the fear and no matter how great the likelihood of the harm—will not suffice. The defendant's fear must be of *imminent* danger to life or great

bodily injury.' [Citation.]" (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1082 [56 Cal.Rptr.2d 142, 921 P.2d 1], fn. omitted.)

█ "It is well established that the ordinary self-defense doctrine—applicable when a defendant *reasonably* believes that his safety is endangered—may not be invoked by a defendant who, through his own wrongful conduct (e.g., the initiation of a physical assault or the commission of a felony), has created circumstances under which his adversary's attack or pursuit is legally justified." (*In re Christian S.* (1994) 7 Cal.4th 768, 773, fn. 1 [30 Cal.Rptr.2d 33, 872 P.2d 574].) Moreover, a quarrel provoked by a defendant, or a danger which he has voluntarily brought upon himself by his own misconduct, is not sufficient to support a reasonable apprehension of imminent danger. (*People v. Holt* (1944) 25 Cal.2d 59, 65–66 [153 P.2d 21].) "In other words, when a defendant seeks or induces the quarrel which leads to the necessity for killing his adversary, the right to stand his ground is not immediately available to him, but, instead, he must first decline to carry on the affray and must honestly endeavor to escape from it." (*Id.* at p. 66; see also *People v. McAuliffe* (1957) 154 Cal.App.2d 332, 340 [316 P.2d 381].)

The trial court properly refused to instruct on self-defense in the instant case because there was no substantial evidence to support the instructions. The uncontroverted evidence showed that it was defendant who sought out the officers with the intent of instigating a shootout. Defendant drove his Caprice to 129th Street, where he saw the officers outside of their car. Rather than merely moving along in order to avoid a confrontation, defendant instead immediately drove off in search of a gun. Once defendant obtained the firearm, he set out and again came upon the officers' vehicle. Defendant could have continued driving on 130th Street when he again saw the officers' vehicle, but rather than simply going about his business, defendant stopped the car, exited with his gun raised toward the officers, and fired three shots.

Moreover, defendant did not testify as to any apprehension of danger he may have felt. While it is true that substantial evidence of a defendant's state of mind may be found in the testimony of witnesses other than a defendant (*De Leon, supra,* 10 Cal.App.4th at p. 824), no other witness in the instant case testified that defendant acted out of reasonable fear on January 6. The most complete version of defendant's conduct on January 7 came from the testimony of Pellum, which was totally devoid of any expression of fear by defendant. It bears emphasis, too, that defendant's tape-recorded statement to the police made no reference to the concept of self-defense. To the contrary, defendant told the police he was not involved in the shooting. There was no substantial evidence of perfect self-defense.

Finally, defendant makes the argument that the trial court was obligated to instruct on the pure form of self-defense because instructions were given on

imperfect self-defense. We reject the contention. First, as pointed out above, there was no substantial evidence to support self-defense instructions. Second, the trial court could have denied unreasonable self-defense instructions for the same reasons that self-defense instructions were properly refused. (See *People v. Rodriguez, supra,* 53 Cal.App.4th at p. 1270.) Third, the concepts of unreasonable self-defense and perfect self-defense are independent, and the giving of instructions on the former does not compel instructions on the latter theory of defense. The trial court did not commit instructional error.

## III

## THE REASONING IN *BLAKELY* DOES NOT APPLY TO CALIFORNIA'S SENTENCING SCHEME

Defendant's final contention on appeal is that the upper term and consecutive sentences imposed by the trial court were based on aggravating facts not determined by the jury beyond a reasonable doubt, or admitted by defendant, in violation of the Sixth Amendment right to a jury trial under *Blakely, supra,* 542 U.S. 296 [124 S.Ct. 2531]. In *Blakely,* the United States Supreme Court held that "a defendant in a criminal case is entitled to a jury trial on any fact that increases the maximum sentence to which the defendant is exposed for a particular offense, unless that fact has been admitted by the defendant or is based on the defendant's prior convictions." (*People v. Black, supra,* 35 Cal.4th at p. 1246 (*Black*).)

The opinion in *Blakely* was filed on June 24, 2004, prior to defendant's sentencing hearing, which was held on July 1, 2004. The trial judge was attuned to the recent decision in *Blakely,* as evidenced by her reference to *Blakely* at the sentencing hearing and obvious grasp of the potential issues involved. Defendant did not object on *Blakely* grounds in the trial court. Issues not raised in the trial court are subject to forfeiture. (*People v. Saunders* (1993) 5 Cal.4th 580, 590 & fn. 6 [20 Cal.Rptr.2d 638, 853 P.2d 1093].) We conclude the issue was forfeited by defendant's failure to raise it in the trial court.

In any event, our Supreme Court has recently rejected defendant's arguments. The reasoning in *Blakely* is inapplicable to the California determinate sentencing scheme because "the judicial factfinding that occurs when a judge exercises discretion to impose an upper term sentence or consecutive terms under California law does not implicate a defendant's Sixth Amendment right to a jury trial." (*Black, supra,* 35 Cal.4th at p. 1244.) The decision of the California Supreme Court in *Black* puts this issue to rest. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

## DISPOSITION

The judgment is affirmed.

Turner, P. J., and Armstrong, J., concurred.

On August 30, 2005, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied November 30, 2005.