Filed 3/18/14  P. v. Burleson CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D063898 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN290018) |
| JEFFREY TRAVIS BURLESON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Richard E. Mills, Judge.  Reversed and remanded for further proceedings.

Patrick J. Hennessey, Jr., by appointment of the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and A. Natasha Cortina, Deputy Attorney General, for Plaintiff and Respondent.

A jury convicted Jeffrey Travis Burleson of improper exhibition of a firearm (count 2:  Pen. Code,[1] § 417, subd. (a)(2)), a misdemeanor, and acquitted him of assault with a firearm (count 1:  § 245, subd. (a)(2)), a felony.  The court placed Burleson on three years' probation and ordered him to serve 120 days of local custody.

Burleson appeals, contending his conviction must be reversed because the court prejudicially erred and denied him his constitutional right to a fair trial by refusing to instruct the jury on the defense of self-defense.  We reverse.

## FACTUAL BACKGROUND

A. *The People's Case*

On March 29, 2011, at around 8:00 p.m., William Gruytch went to Burleson's house to serve a subpoena on Burleson's wife, Erin Blanco (Erin).[2]  It was dark outside and Gruytch knocked on the front door.  After he knocked, he heard dogs barking and waited before knocking again.  He repeated this four or five times over a period of several minutes, but received no response.  As Gruytch began to walk away, he heard the door close behind him.  He was approximately six to 10 feet away from the front door when he turned around and saw Burleson standing outside the door pointing a shotgun at him.

---

[1]    All further statutory references are to the Penal Code.

[2]    Erin's maiden name is Erin Blanco.  However, she adopted her husband's last name and goes by Erin Burleson.  As Burleson and his wife share the same last name, we sometimes refer to his wife by her first name.  We intend no disrespect.

Gruytch walked towards Burleson until he was two to three feet away, said he had a delivery for Erin, and asked if she was there. Burleson said there was no one there by that name. Gruytch explained he was a process server and had legal documents for Erin Blanco. Burleson responded by raising his voice and stating he had never heard of that person. Burleson became very agitated, put the shotgun towards Gruytch's face, and told him to "get the fuck off the property." Gruytch testified he was nervous and wanted to get away from the situation. He threw the legal papers and said, "Fine. You're served." He then left the scene and called the police.

At approximately 8:20 p.m., several police deputies arrived at Burleson's residence, arrested him, and impounded his shotgun.

B. *Defense*

Burleson testified that around 8:00 p.m. on March 29, 2011, he heard knocking on his front door. At the time, Burleson was bathing his two-year-old daughter and three-year-old son while his wife fed their infant in the back bedroom. Initially, Burleson ignored the knocking because he did not want to leave his children unattended in the bathtub and thought it might have been just a salesperson. The knocking lasted for a minute, Burleson's dogs barked loudly for another minute and the knocking resumed. This cycle went on for a few minutes and eventually the knocking escalated to what Burleson described as "[s]ound[ing] like the fire department [was] trying to tell [him] that the house was on fire." He became aggravated.

Eventually, Burleson went to the door and looked through the peephole. He did not recognize the person and asked who he was, but received no response. Burleson

3

described the person as a heavy-set Caucasian male in his mid-50's with a moustache and wearing a torn T-shirt and torn jeans. According to Burleson, the man did not have a badge and did not display any identification. Burleson testified that the person "didn't look like somebody that [he] would want to open the door for." Burleson said he was fearful for the safety of his family and was afraid of what the person potentially had the capacity to do and the access he might have. As soon as he realized he did not know the person, Burleson attempted to call the police, but did not have cell service and his cell phone froze.

Burleson retrieved an unloaded shotgun from his bedroom and instructed his wife and children to stay in the back of the house. He also grabbed shotgun shells and put them in his pocket, but did not load the shotgun. He brought the shotgun with him to the front door and asked who was there, but received no response. He looked through the peephole and saw an individual later identified as Gruytch standing on the side of the front lawn, approximately eight feet from the front door. Burleson believed Gruytch was attempting to look through the windows to see if anyone was home. Burleson opened the door and stepped outside, holding the shotgun with the barrel facing downward toward the ground.

Once outside, Burleson asked, "May I help you?" Gruytch approached him until he was three to four feet away and asked for Erin Blanco. In an aggravated manner, Burleson denied knowing Erin Blanco and told Gruytch to leave or he would have him arrested for trespassing.

4

In response, Gruytch laughed at Burleson and said, "You can't have me arrested for trespassing." Burleson said, "Get the fuck off my property." Gruytch then reached out with papers in his hand, pulled them back when Burleson reached to grab them, dropped them in front of Burleson, and left. Burleson testified it was at that point he realized that the purpose of Gruytch's visit was for legal process, and he was not someone coming after his wife for some other reason.

Burleson testified that he felt threatened by Gruytch when Gruytch came towards him, despite being told to leave and seeing Burleson was armed. He stated Gruytch had a look in his eyes like "ha, ha, you son-of-a-bitch. You have no idea who you're dealing with." Burleson wondered if Gruytch was on drugs due to his behavior.

Burleson denied pointing the shotgun in Gruytch's direction. Burleson testified that during the confrontation, which lasted approximately 45 seconds, Gruytch never identified himself as a process server. He also testified that Gruytch never tried to swing at him, touch him, or pull out a weapon.

Erin also testified and described Gruytch's knocking as "hinge-rattling pounding" that lasted 15 to 20 minutes. She stated that Burleson was bathing their children at the time of the pounding. She heard him lock the back doors, and he told her to stay in their daughter's room and not come out. After a few minutes, Burleson came back to the room. Erin asked him if everything was okay, and he said no. Erin testified the situation was terrifying, and she was scared for her family's safety.

Michael Andreen, who lives near Burleson, testified about being served by Gruytch in March 2011. Andreen recalled a very loud banging at his front door at around

5

8:30 p.m. that caused him to move his family to the back of the house because he feared for their safety. He testified that he wished he had a weapon with him at the time because he thought there was someone outside that was going to hurt him and his family. When Andreen opened the door, Gruytch was very confrontational and seemed angry. Gruytch did not identify himself as a process server during his encounter with Andreen. Gruytch neither displayed a weapon nor touched or pushed Andreen.

## DISCUSSION

### I. *INSTRUCTIONAL ERROR CLAIM*

Burleson contends his misdemeanor conviction must be reversed because the court prejudicially erred and denied his constitutional right to a fair trial by refusing to instruct the jury on the defense of self-defense under CALCRIM No. 3470. Specifically, he contends the court's refusal to give the self-defense instruction was error because the evidence of Gruytch's pounding on the door at night and refusal to identify himself, along with his general appearance and the hour in which the confrontation occurred, supported giving this instruction. Burleson further contends, based on the totality of the circumstances, that the self-defense instruction was required sua sponte and upon the specific request by Burleson. We agree.

A. *Background*

After all testimony and presentation of evidence at trial, Burleson's counsel requested the standard self-defense instruction under CALCRIM No. 3470 as well as those relating to defense of property and persons under CALCRIM Nos. 3475 and 3476, respectively. The court denied counsel's request, stating:

6

"*The Defendant's testimony is inconsistent with these defenses*, generally speaking. His testimony was that he did not commit the acts in Count 1 and Count 2. And, therefore, self-defense would not be relevant.

"If his testimony had been that he'd committed the acts, then self-defense instructions would need to be given. But since he adamantly maintains that he did not commit those acts, it would be inconsistent to argue self-defense.

"So I'm finding that there was no evidence of self-defense presented, no evidence of self-defense to the two charged crimes [that are] presented by the defense.

"The Defendant said he was afraid, and that is evidence he presented. But it doesn't go to—*but he said he didn't commit the crime. So I should not give these instructions*." (Italics added.)

The instructions for self-defense and defense of property and persons were marked and kept in the file as not given by the Court, over the objection by the defense.

B. *Applicable Legal Principles*

The trial court must "instruct the jury on all general principles of law relevant to the issues raised by the evidence, whether or not the defendant makes a formal request." (*People v. Rogers* (2006) 39 Cal.4th 826, 866.) Such a duty includes an obligation to instruct on a defense that the defendant is relying on or a defense that is supported by substantial evidence and is not inconsistent with the defendant's theory of the case. (*People v. San Nicolas* (2004) 34 Cal.4th 614, 669.) In the event there is substantial evidence of a defense inconsistent with the defense advanced by defendant, the court should ascertain whether the defendant wants instructions on the alternate theory. (*People v. Elize* (1999) 71 Cal.App.4th 605, 615.) It follows the court should give the instruction on the alternate defense if the defendant requests the instruction. (*Ibid.*)

7

Substantial evidence means evidence sufficient to deserve consideration by the jury and from which a jury composed of reasonable persons could conclude the particular facts underlying the instruction existed.  (*People v. Wickersham* (1982) 32 Cal.3d 307, 325-326, disapproved on other grounds in *People v. Barton* (1995) 12 Cal.4th 186, 200-201.)  Where the supporting evidence is minimal and insubstantial, there is no sua sponte duty to give a defense instruction.  (*People v. Barnett* (1998) 17 Cal.4th 1044, 1152.)  Thus, a trial court's refusal to give self-defense instructions will be upheld on appeal where the record contains no substantial evidence to support the instructions.  (*In re Christian S*. (1994) 7 Cal.4th 768, 783; *People v. Hill* (2005) 131 Cal.App.4th 1089, 1101, disapproved on another ground in *People v. French* (2008) 43 Cal.4th 36, 48, fn. 5.)

If there is sufficient evidence of self-defense, the court has a sua sponte duty to instruct on the defense.  (*People v. Breverman* (1998) 19 Cal.4th 142, 157; *People v. Elize*, *supra*, 71 Cal.App.4th at p. 615; see also CALCRIM No. 3470.)  To warrant a self-defense instruction there must be substantial evidence in the record that the defendant actually and reasonably feared imminent harm and believed that force was necessary to prevent great bodily injury.  (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1082-1083; *In re Christian S*., *supra*, 7 Cal.4th at p. 783.)  The threat of bodily injury must be imminent, meaning the peril existed or appeared to exist at the very moment the defendant inflicted the assault.  (*In re Christian S*., *supra*, 7 Cal.4th at p. 783; *People v. Humphrey*, *supra*, 13 Cal.4th at p. 1094.)  The right of self-defense is limited to use of force that is reasonable under the circumstances.  (*People v. Minifie* (1996) 13 Cal.4th 1055, 1065.)

C. *Analysis*

We conclude the court erred and denied Burleson's right to a fair trial by refusing to instruct the jury on the defense of self-defense. The court was obligated to give this instruction because the record shows it was supported by substantial evidence. (*People v. San Nicolas*, *supra*, 34 Cal.4th at p. 669.)

Indeed, Burleson described loud banging at his front door on the night of the incident that escalated over a period of several minutes. When Burleson asked who was there, Gruytch would not reply. He next looked out the window and observed a large male in torn clothes, whom he did not recognize. Burleson tried unsuccessfully to call the police. It was at that point Burleson retrieved the shotgun out of concern for his family because it appeared this unknown person had no intention of leaving.

Moreover, the record shows Burleson's testimony was corroborated by Erin's description of "hinge-rattling pounding" that lasted nearly 20 minutes. Burleson's account of Gruytch's threatening behavior was further supported by nearby resident, Andreen, who had a similar encounter with Gruytch. Andreen testified Gruytch banged on his door at night so loud Andreen wished he had a weapon. Andreen described Gruytch's behavior as confrontational and angry.

We thus conclude on this record a jury could reasonably find from the evidence presented that Burleson actually and reasonably believed that Gruytch posed an imminent threat to himself and his family and that Burleson exhibited his shotgun in self-defense. As such, we further conclude the court erred in refusing Burleson's request to give the self-defense instruction. (See *People v. Breverman*, *supra*, 19 Cal.4th at p. 160 [noting a

9

"jury must be allowed to 'consider the *full range* of possible verdicts . . . ' . . . to '*ensure* that the verdict is no harsher or more lenient than the evidence merits.' "].)  We note that although the court, in refusing to give that instruction, reasoned that "[Burleson's] testimony is inconsistent with" the defense of self-defense, on appeal the Attorney General acknowledges that Burleson "correctly maintains self-defense was not inconsistent with his admitted brandishing."

Moreover, we conclude the court's refusal to instruct on self-defense was not harmless.  Error in misdirecting a jury by failing to give an instruction as in this case is reviewed under the harmless error standard adopted in *People v. Watson* (1956) 46 Cal.2d 818.  (*People v. Breverman, supra*, 19 Cal.4th at pp. 175-176.)  Applying this standard, we conclude it is reasonably probable that had the self-defense instruction been given, the result would have been more favorable to Burleson.  (See *People v. Watson, supra*, 46 Cal.2d at p. 836.)

There was enough evidence for the jury to consider the defense of self-defense.  By its verdict, the jury demonstrated its rejection of Burleson's theory that he did not exhibit the shotgun in a rude, angry, or threatening manner.  It rejected the principal charge in count 1 of assault with a firearm (§ 245, subd. (a)(2)), but convicted Burleson of count 2.  However, once the jury determined Burleson's conduct was rude, angry, or threatening in violation of section 417, subdivision (a)(2), it had no choice but to convict him because the trial court erroneously refused to give a self-defense instruction.  We cannot say that the jury would have reached this decision if it had known Burleson's actions may have been justifiable as self-defense.

10

In light of the entire record, we conclude it is reasonably probable that Burleson would have obtained a more favorable result if the jury had been instructed on self-defense.  (See *People v. Watson*, *supra*, 46 Cal.2d at p. 836.)  Accordingly, we conclude that the failure to give a self-defense instruction was not harmless error, and we reverse his conviction of section 417.5, subdivision (c).

## DISPOSITION

The judgment is reversed and remanded for further proceedings.

NARES, J.

WE CONCUR:

McCONNELL, P. J.

IRION, J.