Filed 7/17/14  P. v. Perez CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>REFUGIO PEREZ,<br><br>    Defendant and Perez. | 2d Crim. No. B250046<br>(Super. Ct. No. VA095913)<br>(Los Angeles County) |

          Refugio Perez appeals the judgment entered after he was convicted by a jury of first degree murder.  (Pen. Code, §§ 187, subd. (a), 189.)[1]  The jury found true three special allegations – (1) that the offense was a serious felony; (2) that Perez used a firearm; and (3) that the killing was committed for the benefit of a criminal street gang.

          Perez was sentenced to an indeterminate sentence of 25 years to life plus a determinate sentence of 10 years pursuant to section 186.22 that was stayed, not dismissed.  Although Perez was entitled to 2,587 days of actual presentence custody credits, he was given none.  The People concede the sentencing errors.

---

[1] All subsequent statutory references are to the Penal Code.

Perez contends the trial court erred by failing sua sponte to instruct the jury on the imperfect self-defense theory of voluntary manslaughter. We modify and affirm the judgment.

*FACTUAL AND PROCEDURAL HISTORY*

*The Prosecution's Case*

Enrique Carrillo was a member of the Elm Street gang. Perez was a member of the Grape Street gang. On the night of June 17, 2006, Elm Street gang members fired shots into the home of Perez's girlfriend, Celia Soto, who was also a member of the Grape Street gang. Perez was spending the night with Celia when the shooting occurred.

On June 18, 2006, Perez borrowed Celia's car and drove to Carrillo's house with another Grape Street gang member called "Gato." His intention was to retaliate for the shots fired at Celia's house the night before. Perez admitted to detectives that when he saw Carrillo sitting on his porch he began firing at him with a nine-millimeter pistol. Although Perez claimed Carrillo had a gun and that he fired a shot at him, no gunshot residue was found on Carrillo's body and no weapon was found at the scene of the crime. Carrillo was hit in the chest and the arm and was killed.

Perez was arrested at Celia's residence soon after the incident. Spent nine-millimeter shell casings were found in Celia's car. Gunshot residue was found on Perez's hands.

After waiving his *Miranda* rights (*Miranda v. Arizona* (1966) 384 U.S. 436), Perez confessed to shooting Carrillo in retaliation for the shots fired at the house occupied by him and Celia. A gang detective testified that a gang member who has been wronged or disrespected must retaliate immediately so as not to appear weak before rivals and fellow gang members.

*Perez's Case*

At trial, Perez denied that he shot and killed Carrillo. He claimed that he was pressured into accompanying Gato to Carrillo's house but thought it was just

2

to talk to someone about the shooting on June 17. Perez said he was aware of tension between the two gangs and knew Gato always carried a gun and knew there could be shooting when they got to Carrillo's street.

Perez testified that when he and Gato got to Carrillo's house, he saw two persons on the porch. He testified that he saw someone holding something and then heard a shot coming from the porch. Perez testified that when he heard the shot, he was scared and ducked down to avoid being hurt. Perez said he then heard several shots being fired by Gato from inside the car. Perez denied owning a gun and denied that he ever fired one at Carrillo. Perez said all the shooting was done by Gato.

Perez's counsel objected to jury instructions that would allow the jury to find the killing was a justifiable homicide because it was done in self-defense. Perez's defense was that he was innocent. He claimed he was not the shooter and did not kill Carrillo and argued an instruction on either perfect or imperfect self-defense would undermine his defense.

Nevertheless, Perez argues that the court was obligated sua sponte to give the jury that instruction because substantial evidence in the record supported a finding by the jury that he unreasonably believed Carrillo was shooting at him and that he needed to shoot back to save his own life.

*DISCUSSION*

"A killing committed because of an unreasonable belief in the need for self-defense is voluntary manslaughter, not murder. 'Unreasonable self-defense, also called imperfect self-defense, "obviates malice because that most culpable of mental states 'cannot coexist' with an actual belief that the lethal act was necessary to avoid one's own death or serious injury at the victim's hand." [Citation.]' [Citation.]" (*People v. Elmore* (2014) 59 Cal.4th 121, 129.)

"'A person who actually believes in the need for self-defense necessarily believes he is acting lawfully.' [Citation.] Because express malice

3

requires an intent to kill unlawfully, a killing in the belief that one is acting lawfully is not malicious . . . .'" (*People v. Anderson* (2002) 28 Cal.4th 767, 782.)

"A defendant who acts with the requisite actual belief in the necessity for self-defense does not act with the base motive required for implied malice . . . ." (*In re Christian S.* (1994) 7 Cal.4th 768, 780-781, fn. 4; accord, *People v. Blakeley* (2000) 23 Cal.4th 82, 88.) Unreasonable self-defense is "not a true defense; rather, it is a shorthand description of one form of voluntary manslaughter." (*People v. Barton* (1995) 12 Cal.4th 186, 200.) Whenever there is substantial evidence that the defendant killed in unreasonable self-defense, the trial court must instruct on this theory of manslaughter. (*Id*. at p. 201.)

A defendant may not assert either type of self-defense if he was wholly or partly responsible for creating the circumstances that precipitated the use of deadly force. Thus, a defendant who "'seeks or induces the quarrel which leads to the necessity for killing his adversary'" may not claim self-defense unless he "'honestly endeavor[s] to escape'" from the fight he started (*People v. Hill* (2005) 131 Cal.App.4th 1089, 1102-1103, overruled on other grounds in *People v. French* (2008) 43 Cal.4th 36, 48, fn. 5; *People v. Holt* (1944) 25 Cal.2d 59, 66; *In re Christian S.*, *supra*, 7 Cal.4th at p. 773, fn. 1), or unless such escape is impossible because his adversary launches a "sudden and deadly counter assault." (*People v. Sawyer* (1967) 256 Cal.App.2d 66, 75; *People v. Quach* (2004) 116 Cal.App.4th 294, 302; accord, *Holt*, *supra*, at p. 66 ["'A man has not . . . the right to provoke a quarrel and take advantage of it, then justify the homicide'"].)

In this case, the trial court did not have a duty to instruct sua sponte on imperfect self-defense. First, "'[w]here, as here, the defendant's version of events, if believed, establishes actual self-defense, while the prosecution's version, if believed, negates both actual and imperfect self-defense, the court is not required to give the instruction'" on imperfect self-defense. (*People v. Valenzuela* (2011) 199 Cal.App.4th 1214, 1232.) If the jury believed Perez, it could only lead to a conclusion that he acted in justifiable self-defense, not to a conclusion that he and

4

Gato acted in imperfect self-defense. Second, it is undisputed that Perez and Gato drove to Carrillo's house to retaliate for the shots fired at Celia's house by the Elm Street gang the night before. Immediate retribution was imperative to maintain the fear and respect they believed were due to their gang. Thus, Perez and Gato launched the event that produced the deadly outcome that they knew was likely because they came to the fight with a loaded nine-millimeter pistol.

Moreover, even if the trial court erred in not instructing sua sponte on imperfect self-defense, the error was harmless. "Any error in failing to instruct on imperfect [self-defense or] defense of others is state law error alone, and thus subject, under article VI, section 13 of the California Constitution, to the harmless error test articulated in *People v. Watson* (1956) 46 Cal.2d 818, 836 . . . ." (*People v. Randle* (2005) 35 Cal.4th 987, 1003, overruled on another ground in *People v. Chun* (2009) 45 Cal.4th 1172, 1201.) Pursuant to *Watson*, we "'"evaluate whether 'it is reasonably probable that a result more favorable to [defendant] would have been reached in the absence of the error.'" [Citation.]" (*People v. Loy* (2011) 52 Cal.4th 46, 67.)

It is not reasonably probable that a result more favorable to Perez would have been reached if the jury had been instructed on imperfect self-defense. In its guilty verdicts on the attempted murder charges, the jury found true allegations that Perez committed the crimes for the benefit of a criminal street gang "with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." (§ 186.22, subd. (b)(1).) If the crime was committed for the benefit of a criminal street gang, then it was not motivated by an "unreasonable belief that [Perez] is in imminent danger of death or great bodily injury . . . ." (*People v. Cruz* (2008) 44 Cal.4th 636, 664.)

## DISPOSITION

We modify the judgment to (1) strike the 10-year gang enhancement imposed pursuant to section 186.22, subdivision (b)(1)(C) and impose in its place a 15-year minimum parole eligibility term pursuant to section 186.22, subdivision

5

(b)(5); and (3) to add 2,587 days of actual presence custody credit.  The superior court clerk shall amend the abstract of judgment to reflect our modification and to send a copy of the amended abstract to the Department of Corrections and Rehabilitation.  As modified, the judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>


BURKE, J.[*]


We concur:


GILBERT, P. J.


PERREN, J.

_____

[*] (Judge of the Superior Court of San Luis Obispo County, assigned by the Chief Justice pursuant to art. 6, § 6 of the Cal. Const.)

John A. Torribio, Judge

Superior Court County of Los Angeles
_____

Leslie Conrad, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, Timothy M. Weiner, Deputy Attorney General, for Plaintiff and Respondent.