Filed 6/23/15  P. .v Zuniga CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B254659 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA087551) |
| v. | |
| ANGEL ROBERT ZUNIGA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Dorothy L. Shubin, Judge.  Affirmed as modified.

Melissa A. Fair, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Jonathan J. Kline and Taylor Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In an information filed by the Los Angeles County District Attorney, defendant and appellant Angel Robert Zuniga was charged with one count of carjacking (Pen. Code, §§ 664/215, subd. (a)).[1] The information further alleged that appellant personally used a handgun in the commission of the crime (§ 12022.53, subd. (b)) and that he was released on bail or his own recognizance at the time of the crime (§ 12022.1). It was also alleged that appellant had served three prior prison terms (§ 667.5, subd. (b)).

Appellant pleaded not guilty and denied the allegations. Trial was by jury. The jury found appellant guilty as charged and found the firearm-use allegation to be true. In a bifurcated proceeding, appellant admitted the on-bail and prior prison allegations.

The trial court denied probation and sentenced appellant to a total term of 14 years six months in state prison, computed as follows: the midterm of two years six months on the substantive offense, plus 10 years on the firearm-use enhancement, and two years on the on-bail enhancement.[2] The trial court imposed and stayed the one-year sentences on each of the prior prison term enhancements. He was awarded 548 days of presentence custody credits. Various fines and fee were imposed and one was stayed.

Appellant timely filed a notice of appeal. On appeal, he argues that the trial court erred in denying his *Pitchess*[3] motion and that that error requires a conditional reversal to allow the trial court to hold an in camera hearing.

We affirm.

---

**1** All further statutory references are to the Penal Code unless otherwise indicated.

**2** According to the People's brief, the abstract of judgment incorrectly reflects the sentence imposed on the fire-arm use and on-bail enhancements. The trial court imposed a 12-year sentence, but the abstract of judgment indicates that appellant was sentenced to 12 years 6 months. The People ask that we correct the abstract to delete the six-month sentence.

**3** *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

**FACTUAL BACKGROUND**

I. *Prosecution Evidence*

On September 27, 2012, at approximately 10:50 p.m., Jose Raygoza (Raygoza) and Melissa Nunez (Nunez) were in a McDonald's parking lot in San Gabriel when two men approached them. Raygoza was sitting in the driver's seat of his car, and Nunez was standing outside near the driver's door. One of the men, later identified as appellant, asked Raygoza what gang he was from. Raygoza replied that he was not a gang member. When Raygoza got out of his truck, appellant demanded his car keys. Raygoza did not immediately comply. After demanding the car keys three times, appellant lifted up his shirt, showed Raygoza part of a gun, and said, "'This is your last call.'" Raygoza told appellant that his car keys, wallet, and cell phone were on the dashboard. When appellant looked inside the car, Raygoza and Nunez ran away.

Raygoza and Nunez went inside the McDonalds and called 911. Raygoza told the dispatcher that appellant and another man attempted to take his truck. Raygoza described appellant to the dispatcher as Hispanic and said that he was wearing blue pants, a white and blue football jersey, and a blue hat. At trial, Raygoza testified that appellant was wearing a sports jersey, baggy blue pants, and a hat. Appellant's accomplice was bald, and he wore a dirty white or brownish shirt and shorts. Nunez testified at trial that appellant was wearing a blue and white Dodger jersey and baggy blue jeans. From inside McDonald's, Raygoza and Nunez saw appellant and his accomplice look inside the car and then run away.

Los Angeles Sheriff's Deputies Juan Rivas and David Kearney responded to the 911 call. Deputy Rivas interviewed Raygoza and Nunez and put out a crime broadcast that included the description of the suspects given to him by Raygoza and Nunez. Deputy Rivas testified that Raygoza said that the man with the gun had tattoos above his eyebrows, and Nunez said that the gunman had tattoos on his face.

About 40 to 45 minutes later, Los Angeles Sheriff's Deputy Roberto Roman and his partner located and detained appellant because he matched the suspect's description.

3

In particular, appellant was Hispanic, was wearing blue jeans, had a shaved head, and had tattoos on his forehead, eyebrows, and chest.

Raygoza and Nunez were brought to the location for an in-field identification or field show-up. Raygoza positively identified appellant. Raygoza told the deputies that if the suspect had tattoos over his eyebrows, then he was the perpetrator. Nunez also identified appellant at the field show-up. Appellant was not wearing a shirt at the time of the field show-up.

Nunez identified appellant again from a live line-up on December 3, 2013.

II. *Defense Evidence*

The defense presented alibi evidence showing that appellant was engaged in sexual activities with a woman in a car near the crime scene around the time of the crime. It also presented expert testimony concerning false identification.

## DISCUSSION

On appeal, appellant argues that the trial court committed reversible error by summarily denying his *Pitchess* motion and failing to hold an in camera hearing. He contends that he met the low threshold of showing good cause for the discovery or disclosure of the personnel file of Deputy Kearney.

A. Relevant Procedural History

1. *Appellant's Pitchess Motion*

Appellant filed a pretrial *Pitchess* motion seeking discovery of personnel records of Deputy Kearney concerning: "All complaints from any and all sources relating to acts of violation of constitutional rights, fabrication of charges, fabrication of evidence, fabrication of reasonable suspicion and/or probable cause, illegal search/seizure; false arrest, perjury, dishonesty, writing of false police reports, writing of false police reports to cover up the use of excessive force, planting of evidence, false or misleading internal reports including but not limited to false overtime or medical reports, and any other evidence of misconduct amounting to moral turpitude."

Appellant's counsel submitted a declaration in support of the motion. The declaration alleges that Deputy Kearney authored the police report, which is not attached

4

to the declaration. According to that police report (as represented in the declaration), Nunez identified the gunman based on his face and goatee, and Raygoza identified the gunman based on his dark blue baggy pants and eyebrow tattoos. According to defense counsel, the description of the gunman in the police report contradicted Nunez's and Raygoza's preliminary hearing testimonies.

Regarding Raygoza, the police report showed that he stated that the gunman had a shaved head, but he testified at the preliminary hearing that the gunman was wearing a hat. Counsel surmised that "Raygoza could not have known whether the suspect had a shaved head, thus raising questions about the police report." Furthermore, the police report suggested that Raygoza testified at the preliminary hearing that he told the deputies that "'if'" the suspect had tattoos above his eyebrows, then he was the gunman. Raygoza did not actually see the suspect's eyebrow tattoos at the field show-up.

As for Nunez, the police report showed that she reported that the gunman had tattoos above his eyebrows. However, she testified at the preliminary hearing that she did not tell the police about any tattoos; nor did she see any tattoos on the suspect during the field show-up. Rather, Nunez emphasized that the gunman had a goatee; but, the police report did not mention a goatee in Nunez's description. In addition, the police report showed that Nunez said that the gunman and his accomplice fled east on Duarte Road after committing the crime, but Nunez testified at the preliminary hearing that she did not see the direction in which they fled.

Finally, the police report suggested that Nunez and Raygoza gave very similar clothing descriptions of the gunman while in fact they gave very different descriptions of his clothing at the preliminary hearing. For example, although Nunez and Raygoza testified at the preliminary hearing that the gunman did not wear sunglasses when committing the crime, the suspect was wearing sunglasses at the field show-up. Thus, according to defense counsel, "Raygoza and Nunez not only contradicted the police report, but [they] also said vastly different things from each other, which makes the police report which relays their descriptions of the suspect as identical even more problematic."

5

Based on the foregoing, counsel concluded that Deputy Kearney authored a false police report to ensure appellant's arrest; he also allegedly omitted Raygoza and Nunez's uncertainty about the field identification of appellant. Defense counsel requested material about Deputy Kearney to determine if he has a custom or habit of engaging in similar misconduct.

### 2. *The Police Report*

Deputy Rivas interviewed Raygoza and Nunez at the scene of the crime. He testified that he also authored the police report. Both Deputies Rivas and Kearney signed the report.

The police report showed that Raygoza told the deputies that the gunman was Hispanic; that he had a shaved head and tattoos over his eyes; and that he wore a brown or orange shirt with dark, jean-type pants. The accomplice was a White male in his 20's. He had a goatee and wore a white or blue shirt and hat.

Nunez told Deputies Kearney and Rivas that the gunman was Hispanic, had a shaved head and tattoos over his eyebrows, and wore a brown shirt. The accomplice was a White male, had a goatee, and wore a white and blue shirt and hat. After the crime, Nunez said that the suspects fled eastbound on Duarte Road.

### 3. *Preliminary Hearing Testimony*

Raygoza and Nunez's testimony at the preliminary hearing was consistent with their trial testimony. Raygoza described the perpetrators as Hispanic and White. The Hispanic man, who Raygoza identified as appellant, wore dark pants, a dark hat, and a "bluish-grayish" "NFL" shirt. Appellant also had tattoos above his eyebrows. The White accomplice was in his late 20's, was bald, and had a goatee that wrapped around his mouth. He wore black pants and a "whitish brown" T-shirt At the field show-up, Raygoza could not actually see appellant's eyebrow tattoos because of the distance between him and appellant, but he told the deputies: "'If I'm not wrong, this guy has two tattoos on the eyebrows.'" Raygoza testified that he did not identify appellant from his clothing because appellant was not wearing a shirt or hat at the field show-up.

6

Nunez testified at the preliminary hearing that the gunman, who she identified as appellant, was Hispanic and bald. He wore a blue Dodger jersey and blue jeans. She did not notice any tattoos on him because it was nighttime and she was trying not to look at his face. She did notice his goatee. She testified that his accomplice was also Hispanic and bald. He was in his 30' and wore a brownish-orange T-shirt and brown sweatpants. Nunez later identified appellant at the field show-up and at the live line-up. She testified that she recognized appellant at the field show-up by his goatee. She further testified that she did not see the direction in which appellant and his accomplice ran after the crime.

B. <u>Relevant Legal Principles and Standard of Review</u>

"For approximately a quarter-century our trial courts have entertained what have become known as *Pitchess* motions, screening law enforcement personnel files in camera for evidence that may be relevant to a criminal defendant's defense." (*People v. Mooc* (2001) 26 Cal.4th 1216, 1225, fn. omitted (*Mooc*)); see *Pitchess*, *supra*, 11 Cal.3d 531.) To balance the defendant's right to discovery of records pertinent to his or her defense with the peace officer's reasonable expectation that his or her personnel records will remain confidential, the Legislature has adopted a statutory scheme requiring a defendant to meet certain prerequisites before his or her request may be considered. (See §§ 832.5, 832.7 & 832.8; Evid. Code, §§ 1043-1047 [statutory scheme governing *Pitchess* motions].) Specifically, a defendant seeking discovery of a peace officer's confidential personnel record must file a written motion describing the type of records or information sought (Evid. Code, § 1043) and include with the motion an affidavit demonstrating "good cause" for the discovery and the materiality of such evidence relative to the defense. (*Mooc*, *supra,* at p. 1226; see also *Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1019 (*Warrick*).) The information must be requested with "sufficient specificity to preclude the possibility of a defendant's simply casting about for any helpful information [citation]." (*Mooc*, at p. 1226.)

Once the trial court concludes the defendant has satisfied these prerequisites, the custodian of records is obligated to bring to court all documents "'potentially relevant'" to the defendant's motion. (*Mooc*, *supra*, 26 Cal.4th at p. 1226.) The trial court must

7

then examine the information in chambers, outside the presence of any person except the proper custodian "and any other persons as the person authorized to claim the privilege is willing to have present." (Evid. Code, §§ 915, subd. (b), 1045, subd. (b); see *Warrick*, *supra*, 35 Cal.4th at p. 1019.) Subject to certain statutory exceptions and limitations,[4] the trial court must then disclose to the defendant "'such information [that] is relevant to the subject matter involved in the pending litigation.'" (*Mooc*, *supra*, at p. 1226; *Warrick*, *supra*, at p. 1019.) As the parties here agree, "[a] trial court's ruling on a motion for access to law enforcement personnel records is subject to review for abuse of discretion." (*People v. Hughes* (2002) 27 Cal.4th 287, 330; see also *People v. Moreno* (2011) 192 Cal.App.4th 692, 701; *People v. Cruz* (2008) 44 Cal.4th 636, 670.)

C. Analysis

Appellant challenges the trial court's denial of his *Pitchess* motion, arguing that he established the necessary good cause to review the records of Deputy Kearney. He argues that he satisfied the "relatively low threshold" for establishing good cause for an in camera review. (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 83–84; *Warrick*, *supra*, 35 Cal.4th at p. 1019.)

We disagree. Appellant's *Pitchess* motion is based upon the theory that Deputy Kearney authored a false police report. But, appellant failed to provide us (and the trial court) with a copy of that police report. And, notably, Deputy Kearney did not author the police report. Thus, we find no abuse of discretion.

Setting that aside, and considering appellant's argument based upon what is presented in the appellate record, we still find no abuse of discretion. Again, appellant contends that inconsistencies between Raygoza's and Nunez's statements warrant an in

---

[4]    The trial court must exclude from discovery: "(b)(1) Information consisting of complaints concerning conduct occurring more than five years before the event or transaction that is the subject of the litigation in aid of which discovery or disclosure is sought. [¶] (2) In any criminal proceeding the conclusions of any officer investigating a complaint filed pursuant to Section 832.5 of the Penal Code. [¶] (3) Facts sought to be disclosed that are so remote as to make disclosure of little or no practical benefit." (Evid. Code, § 1045; see also *Mooc*, *supra*, 26 Cal.4th at pp. 1226–1227.)

camera inspection of Deputy Kearney's personnel file.  But, defense counsel never provided a specific factual scenario of police misconduct that might have occurred or an "alternate version of the events."  (*People v. Thompson* (2006) 141 Cal.App.4th 1312, 1318.)  Although appellant presented alibi evidence at trial, he did not provide that factual scenario in his *Pitchess* motion.  His failure to do so reasonably allowed the trial court to conclude that he had omitted a material fact in seeking Deputy Kearney's personnel files.

Even if the trial court erred in failing to hold an in camera review of Deputy Kearney's personnel file, that error would have been harmless.  (*People v. Samuels* (2005) 36 Cal.4th 96, 110; *People v. Hill* (2005) 131 Cal.App.4th 1089, 1100, fn. 8, overruled in part on other grounds in *People v. French* (2008) 43 Cal.4th 36, 48, fn. 5.)  Here, as set forth above, there was strong evidence of appellant's guilt.  And, the People's case did not rest on the testimony and credibility of Deputy Kearney.  Rather, it was predicated almost entirely upon the testimony of Raygoza and Nunez, who were present during the crime and who identified appellant.  The case also rested on the testimony of Deputies Rivas and Roman.  Under these circumstances, even if the trial court had erred by not holding an in camera hearing, we would find that error harmless.

## DISPOSITION

The judgment as modified is affirmed.  On remand, the abstract of judgment shall be corrected to reflect appellant's sentence of 12 years.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


                      _____, J.
                          ASHMANN-GERST

We concur:


_____, P. J.     _____, J.
           BOREN                         CHAVEZ