[No. D051900. Fourth Dist., Div. One. May 21, 2008.]

JOSE UYBUNGCO, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
SAN DIEGO POLICE DEPARTMENT, Real Party in Interest.

1044

Counsel

Steven J. Carroll, Public Defender, Nancy Song and Matthew Braner, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Michael J. Aguirre, City Attorney, and David M. Stotland, Deputy City Attorney, for Real Party in Interest.

Opinion

**IRION, J.**—Jose Uybungco seeks reversal of a trial court ruling denying his motion for discovery from the personnel files of four police officers involved in his arrest on misdemeanor charges. Uybungco contends that the trial court erred because his motion satisfied the low threshold required to obtain limited discovery from police personnel files under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305] (*Pitchess*). As discussed below, we agree with Uybungco's contention and grant the petition.

FACTS

The charges against Uybungco arise out of an event that is summarized in the reports of four separate police officers. Because Uybungco requested discovery from the personnel files of each of the four officers, alleging that the reports were falsified, each report is summarized independently below.

A. *Police Officer Report: Officer Hall*

On April 6, 2007, San Diego Police Department Officers Hall and Curran observed a fight involving patrons of the Red Circle Café (Red Circle) in downtown San Diego. The officers identified themselves and instructed the bar patrons to stop fighting. One of the patrons, Robert Anguiano, did not comply. While Officer Curran was attempting to physically subdue Anguiano,

Officer Hall observed Uybungco "advancing quickly towards Officer Curran" with "his right hand in a closed fist." As Uybungco "began to cock his right arm backwards as if he was going to punch Officer Curran," Hall hit Uybungco's upper chest with his open hands, forcing Uybungco to back away. Hall informed Uybungco that he was under arrest and, when Uybungco tried to pull away, attempted to subdue him. Uybungco continued to resist Hall's efforts and Hall was forced to strike Uybungco repeatedly in order to handcuff him. After he was placed in the backseat of a patrol car, Uybungco "used his head to try and break out the [side] window" and eventually "hit[] the window so hard [he] knocked it off the track."

### B. *Police Officer Report: Officer Curran*

Officer Curran arrived at the Red Circle and observed Anguiano "throwing punches wildly at Red Circle security guards." When Curran moved to stop Anguiano, Anguiano "spun around and cocked his right arm and fist . . . in a fighting stance." As Curran was subduing Anguiano, Uybungco "approached me quickly from just behind my right shoulder," but Officer Hall intervened as Uybungco "was attempting to strike me with his right closed fist."

### C. *Police Officer Report: Officer Decesari*

Officer Decesari arrived at the Red Circle after Officers Hall and Curran. From a distance, he observed Uybungco standing over Curran with "his arm 'cocked' back as if he was about to strike" him. Decesari moved to assist Curran in subduing Anguiano and pepper sprayed Anguiano's face. Decesari then observed Uybungco "fighting Officer Hall" and moved to assist Hall. Decesari pepper sprayed Uybungco and, after a lengthy struggle involving assistance from a "security guard from the club Confidential," succeeded in subduing him. Uybungco was placed in a patrol car in which he "slammed his forehead into the door's window knocking it off its track."

### D. *Police Officer Report: Officer Vasquez*

Officers Vasquez and Aguilar arrived at the Red Circle after Uybungco and Anguiano were subdued to transport the suspects to the police station. After Officer Hall placed Uybungco in the back of Vasquez's patrol vehicle, Uybungco "began to hit his head against the right rear window" causing the window to be "knock[ed] out of its frame." Vasquez opened the door and pepper sprayed Uybungco in the face.

## PROCEDURAL HISTORY

Based on the events described in the police reports, Uybungco was charged with two misdemeanor offenses: resisting a peace officer (Pen. Code, § 148, subd. (a)(1)) and vandalism (*id.*, § 594, subds. (a), (b)(2)). Uybungco pleaded not guilty and filed a *Pitchess* motion seeking discovery from the personnel files of the police officers involved in his arrest.

In the motion, Uybungco sought any evidence of, or complaints of (1) excessive force; (2) aggressive conduct; (3) unnecessary violence; (4) unnecessary force; (5) false arrest; (6) false statements in police reports; (7) false claims of probable cause; (8) false testimony; and (9) any other evidence of complaints of dishonesty against Officers Hall, Decesari, Curran and Vasquez.[1] Uybungco attached a sworn declaration to the motion. In the declaration, Uybungco stated he was about to leave the Red Circle when he observed Anguiano fighting with some bouncers. Uybungco attempted to break up the fight. The police then arrived, and in the process of intervening, "slammed . . . Anguiano's head multiple times into the asphalt pavement." Uybungco approached the officers and told them, "Get off him, get off him, he is already down." Uybungco stated he had his shirt off and was holding it in his right hand, and did not "cock his arm to strike any officers."[2] The police officers cursed at Uybungco, telling him to "back off." After about 20 to 30 seconds, Officer Hall pushed Uybungco and told him he was under arrest. When Uybungco turned to walk away, Officer Decesari pepper sprayed him, and (according to Uybungco) both Hall and Decesari "grabbed him and threw him on the ground," subsequently "punching and kicking him while he was still on the ground." Uybungco was then placed in a patrol car. When a second person was placed in the car, Uybungco noticed a strong smell of pepper spray, "couldn't breathe" and "tapped his head against the car window to get the officers' attention." Uybungco claimed that he "did not resist, delay, or obstruct any police officer" and "did not vandalize [the patrol car] right rear window by hitting his head against it to knock the window off its tracks."

Uybungco further specifically contended that Officers Hall, Curran, Vasquez and Decesari lied in their reports by stating that Uybungco cocked his arm as if to hit Curran, resisted arrest and/or knocked the patrol car window off of its track. Uybungco also alleged that Officers Hall, Vasquez and Decesari used excessive force in subduing him.

Uybungco's *Pitchess* motion was opposed by the city attorney, appearing on behalf of the San Diego Police Department. After hearing argument on the

---

[1] At a later hearing, Uybungco's counsel agreed to limit the request related to dishonesty to accusations of "false statements contained" in "police report[s]."

[2] During argument on the motion, Uybungco's counsel stated that Uybungco had two shirts, one that he was wearing and another in his hand.

motion, the trial court ruled that it would review the personnel files of Officers Hall and Decesari for evidence related to the allegation of excessive force. It is unclear from the record whether the trial court also agreed to review the personnel files of those two officers for allegations that they had included false statements in a police report. The court rejected the defense request that it review the files of Officers Vasquez and Curran.

Uybungco petitioned for a writ of mandate in the appellate division of the superior court. The appellate division issued a summary denial of the petition. Uybungco then filed a petition for a writ of mandate in this court, which was also summarily denied. Uybungco sought review of this court's order in the Supreme Court. The Supreme Court granted Uybungco's petition for review and ordered this court to vacate its previous order and issue an order to show cause "why defendant is not entitled to discovery of police officer personnel records pertaining to complaints of the filing of false police reports by all four officers." (*Uybungco v. Superior Court* (Feb. 20, 2008, S159175) order transferring cause [2008 Cal. Lexis 2124].) We issued the order to show cause.

## DISCUSSION

Uybungco contends that the trial court erred in denying his *Pitchess* motion and requests that we order the trial court to conduct the requested in camera review. We evaluate this request after setting forth the applicable legal principles.

### A. *Applicable Legal Principles*

██ A defendant is entitled to discovery from a police officer's confidential personnel records if those files contain information that is potentially relevant to the defense. (*Pitchess, supra*, 11 Cal.3d at pp. 537–538; Evid. Code, §§ 1043–1045.) To exercise this right, a defendant must file a motion demonstrating good cause for the discovery which, if granted, results first in an in camera court review of the records and subsequent disclosure to the defendant of information "relevant to the subject matter involved in the pending litigation." (Evid. Code, § 1045, subd. (a).)

There is a " 'relatively low threshold' " for establishing the good cause necessary to compel in camera review by the court. (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1019 [29 Cal.Rptr.3d 2, 112 P.3d 2] (*Warrick*).) Nevertheless, a defendant is not entitled to even an in camera review of police personnel files without first " 'establish[ing] a plausible factual foundation' " for the defense asserted. (*Id.* at p. 1025.) The defendant "must

present . . . a specific factual scenario of officer misconduct that is plausible when read in light of the pertinent documents." (*Ibid.*) In doing so, the defendant need not point to any corroboration for the defendant's account, and is also not required to "present a *credible* or *believable* factual account of, or a motive for, police misconduct." (*Id.* at p. 1026.) Rather, all that is required is the presentation of a scenario "that might or could have occurred. Such a scenario is plausible because it presents an assertion of specific police misconduct that is both internally consistent and supports the defense proposed to the charges." (*Ibid.*) "[D]epending on the circumstances of the case," a sufficient factual allegation in a *Pitchess* motion "may consist of a denial of the facts asserted in the police report." (*Warrick*, at pp. 1024–1025.)

We review a trial court's ruling on a *Pitchess* motion for abuse of discretion. (*People v. Samayoa* (1997) 15 Cal.4th 795, 827 [64 Cal.Rptr.2d 400, 938 P.2d 2]; *People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 992 [47 Cal.Rptr.3d 467, 140 P.3d 775].)

### B.  *Analysis*

Consistent with the Supreme Court's order granting his petition for review, Uybungco emphasizes "the narrow scope" of his request, which seeks solely that the trial court "review . . . the personnel files of Officers Curran and Vasquez for writing dishonest police reports" as well as those of Officers Hall and Decesari for the same subject matter "if the trial court did not already conduct this review."[3] (See *Uybungco v. Superior Court, supra*, 2008 Cal. Lexis 2124 [directing this court to issue an order to show cause "why defendant is not entitled to discovery of police officer personnel records pertaining to complaints of the filing of false police reports by all four officers"]; cf. *California Highway Patrol v. Superior Court* (2000) 84 Cal.App.4th 1010, 1021 [101 Cal.Rptr.2d 379] ["only documentation of past officer misconduct which is *similar* to the misconduct alleged by defendant in the pending litigation is relevant and therefore subject to discovery"].) As explained below, we agree that Uybungco is entitled to the requested relief.

In support of his *Pitchess* motion, Uybungco presented a sworn declaration alleging that he did not resist the police, and contending that the statements in the police reports written by each of the four officers (that he cocked his fist, resisted arrest and knocked the patrol car window out of alignment) were false. The allegations in Uybungco's declaration, as summarized above, satisfy the " 'relatively low threshold' " for in camera review, as they depict a scenario "that might or could have occurred" and are plausible in that they

---

[3] Given Uybungco's limitation on the scope of his request, we need not address the city attorney's contention that there is no basis to review Officers Curran's and Vasquez's case files for prior instances of the use of *excessive force*.

"present[] an assertion of specific police misconduct that is both internally consistent and supports the defense proposed to the charges." (*Warrick, supra,* 35 Cal.4th at pp. 1019, 1026.) Consequently, Uybungco's declaration was sufficient to compel the trial court to conduct an in camera review of each of the four officers' personnel files for information that they previously had included false information in a police report. (*Id.* at p. 1027.) The trial court's refusal to do so constituted an abuse of discretion. (*People v. Jacobs* (2007) 156 Cal.App.4th 728, 737 [67 Cal.Rptr.3d 615] [" 'Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion.' "], quoting *City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297 [255 Cal.Rptr. 704].)

■ The city attorney argues that Uybungco's allegation that the police reports were falsified is insufficient to compel in camera review because "[m]ost of the 'factual discrepancies' . . . are really differences in perception, perspective, opinion, or characterization, not actual dishonesty." The city attorney contends that the officers and Uybungco simply "hav[e] a different interpretation of a set of essentially agreed facts," and such differing perspectives are simply "human nature," not suggestive of misconduct. We find this contention unpersuasive. According to Uybungco, he asked the officers to get off of Anguiano when they slammed Anguiano's head to the asphalt. Uybungco then contends that after about 20 to 30 seconds, Officer Hall pushed him backwards and (with Officer Decesari) pepper sprayed him, threw him to the ground, and kicked and punched him. Uybungco further claims that he never resisted arrest or knocked the patrol car window off of its track with his head, and that these accusations were fabricated by the officers. Given these allegations, it is impossible to characterize the differences between Uybungco's declaration (which depicts police officers engaged in unprovoked misconduct and subsequent false accusation of a person who challenged their actions) and the police reports (which depict a professional and measured response to out-of-control bar patrons) as a matter of "perception" or "a different interpretation of a set of essentially agreed facts." Rather, a fair comparison of Uybungco's declaration with the police reports reveals a clear allegation of police misconduct and false accusation which, if believed, would strongly support a defense to the charged offenses—in short, the very essence of the " 'low threshold' " showing required to trigger in camera *Pitchess* review. (*Warrick, supra,* 35 Cal.4th at p. 1019.)

Indeed, the instant case is legally indistinguishable from *Warrick,* which the city attorney recognizes as "the leading case" in this context. In *Warrick,* the defendant "asserted that the officers mistook [him] for the person who actually discarded [a bag of] cocaine, and falsely accused him of having done

so." (*Warrick, supra*, 35 Cal.4th at p. 1027.) The court explained that by virtue of this allegation, the "defendant has outlined a defense raising the issue of the practice of the arresting officers to make false arrests, plant evidence, commit perjury, and falsify police reports or probable cause," entitling him to "the trial court's in-chambers review of the arresting officers' personnel records relating to making false arrests, planting evidence, fabricating police reports or probable cause, and committing perjury." (*Ibid.*) As the same analysis leads to an identical conclusion in the instant case, the trial court was required to grant the *Pitchess* motion and conduct a review of the personnel files of all four officers for evidence of prior falsification of police reports.[4] (See *Warrick, supra*, 35 Cal.4th at p. 1027; see also *Hustead, supra*, 74 Cal.App.4th at p. 418 [good cause established for in camera review where "the police report indicated that appellant drove in a dangerous manner," but a defense declaration "asserted that defendant did not drive in the manner suggested in the report"; the declaration "led to a reasonable inference that the officer may not have been truthful," making it "relevant whether the officers have been accused of falsifying reports in the past"]; *California Highway Patrol v. Superior Court, supra*, 84 Cal.App.4th at pp. 1022–1023 [holding that *Pitchess* motion established good cause for discovery of complaints that police officer "previously falsified police reports" where police officer's report, "which indicated that defendant was violent and resisted arrest," conflicted with defense declaration that "defendant did not act violently until officers used excessive force"]; *Brant, supra*, 108 Cal.App.4th at p. 108 [ordering in camera review for evidence of, among other things, " 'fabrication of police reports' " where defense declaration "challenged the officers' account of the detention, search and manner in which his confession was obtained by providing his own version of the events, thereby making the officers' truthfulness material to the issues in the case"].)

---

[4] The city attorney suggests that even if we agree with Uybungco, the appropriate remedy is for this court to "issue an order requiring the superior court to furnish a transcript of the in camera proceedings to the court under seal," and then, ourselves, "assess whether any error in the trial court's ruling" was "prejudicial." We decline to do so. Even if we were inclined to follow the proposed procedure, it would fail to remedy the *Pitchess* error with respect to the files of Officers Vasquez and Curran, which were—as far as the record reveals—never reviewed by the trial court. Rather, we follow the standard practice when *Pitchess* error has occurred of *remanding* for the trial court to conduct the necessary in camera review. (See, e.g., *People v. Hustead* (1999) 74 Cal.App.4th 410, 419 [87 Cal.Rptr.2d 875] (*Hustead*) [remanding to trial court for requisite in camera review]; *Brant v. Superior Court* (2003) 108 Cal.App.4th 100, 109 [132 Cal.Rptr.2d 783] (*Brant*) [same]; *City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 94 [260 Cal.Rptr. 520, 776 P.2d 222] [reversing based on *Pitchess* error and ordering "remand[] . . . to the municipal court" for in camera review]; see also *People v. Johnson* (2004) 118 Cal.App.4th 292, 305–307 [12 Cal.Rptr.3d 885] [reversing judgment of conviction and remanding for trial court to conduct *Pitchess* review and subsequently evaluate prejudice if relevant information was revealed].)

## DISPOSITION

Let a writ of mandate issue directing the superior court to vacate its ruling of September 21, 2007, and conduct an in camera review of the four officers' personnel files as specified in this opinion. The stay issued by this court on February 28, 2008, is vacated. Each party to bear its own costs. This opinion will be final as to this court within seven days of filing.

Nares, Acting P. J., and McDonald, J., concurred.