Filed 7/31/14  P. v. Ruddell CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B248103 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA085821) |
| v. | |
| TAYLOR WILLIAM RUDDELL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Candace J. Beason, Judge.  Conditionally reversed and remanded with directions.

Catherine White, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Chung L. Mar and Viet H. Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Taylor William Ruddell appeals from the judgment entered following a jury trial that resulted in his conviction for resisting an executive officer. The trial court suspended imposition of sentence and placed Ruddell on formal probation for three years. Ruddell contends the trial court erred by finding he failed to demonstrate good cause for an in camera *Pitchess*[1] review of officers' personnel files. We agree with this contention in part. We therefore conditionally reverse the judgment of conviction and remand the case to the trial court for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Factual background.*[2]

At 6:00 a.m. on March 13, 2012, a team of Los Angeles County Sheriff's personnel executed a search warrant at appellant Ruddell's San Gabriel home. According to the deputies' reports, Ruddell displayed a small knife and struggled with Deputies Garcia, Ballesteros, and Palmieri. Deputy Pulido observed a woman, Tamiko Juvinall, dump suspected methamphetamine down a bathroom sink. According to Pulido, both Juvinall and Ruddell made inculpatory statements to him regarding the methamphetamine and other items found in the search. As a result of the incident, Ruddell was charged with two counts of resisting an executive officer.

a. *The <u>Pitchess</u> motions.*

Prior to trial, Ruddell filed a *Pitchess* motion seeking personnel records of Deputies Garcia, Ballesteros, Palmieri, and Pulido, as well as those of Sergeant Moreno, Lieutenant Murakami, and Deputies Suarez, Lopez, Valles, Cantu, Busch, and Ramirez, who had also participated in executing the search warrant. The motion sought information regarding complaints made against the officers related to "conduct that amounts to moral turpitude, including but not limited to" the use of excessive force, false

---

[1] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

[2] Because Ruddell's sole contention on appeal is that the trial court abused its discretion by denying his *Pitchess* motion, we omit discussion of the evidence adduced at trial.

arrest, planting evidence, fabrication of police reports including to "cover up" the use of excessive force, fabrication of probable cause, false testimony, and perjury, as well as "false or misleading internal reports including medical and overtime" reports. The motion was supported by defense counsel's declaration, and a police report regarding the incident authored by Deputy Pulido.

Approximately two weeks later Ruddell filed a second *Pitchess* motion seeking personnel records of Deputies Garcia, Ballesteros, Palmieri, and Pulido. In addition to the categories of information sought in the initial motion, Ruddell's second motion sought complaints regarding racial, gender, ethnic, and sexual orientation bias; coercive conduct; violation of constitutional rights; illegal search and seizure; "acts of aggressive behavior" and violence; dishonesty; fabrication of charges or evidence; and "any other evidence of misconduct amounting to moral turpitude.[3] The second motion was supported by defense counsel's declaration and police reports prepared by Deputies Ballesteros, Pulido, Garcia, and Palmieri.

The sheriff's department opposed both motions.

b. *The police reports.*

The four police reports, viewed together, described the incident as follows. On March 13, 2012, at 6:00 a.m., Los Angeles County Sheriff's Department personnel, including Lieutenant Murakami, Sergeant Moreno, and Deputies Garcia, Ballesteros, Palmieri, Pulido, Suarez, Lopez, Valles, Cantu, Busch, and Ramirez, executed a search warrant at Ruddell's San Gabriel home. The officers announced their presence and forcibly entered the residence.

As Garcia and Ballesteros entered Ruddell's bedroom, they observed Ruddell standing with a small knife in his right hand. Garcia, while pointing his handgun at

---

[3] Ruddell's motions also sought information discoverable pursuant to *Brady v. Maryland* (1963) 373 U.S. 83. On appeal, Ruddell does not contend any *Brady* material was withheld. Ruddell's second motion also sought complaints against the deputies by prison inmates. Ruddell does not challenge the trial court's ruling on this point. Accordingly, we do not address these aspects of Ruddell's motions.

Ruddell, ordered him to drop the knife and get on the floor. Ruddell did not comply. Instead he yelled, " 'Fuck all you motherfuckers' " and attempted to flee through a door leading from the bedroom to the backyard. Garcia grabbed Ruddell's left arm and tackled him to the floor. Garcia lost control of Ruddell's left arm but gained control of Ruddell's right hand, in which he was holding the knife. Garcia repeatedly ordered Ruddell to release the knife and stop resisting. Deputy Ballesteros sat on Ruddell's upper hamstring and buttock area and attempted to grab Ruddell's legs as he "kicked wildly in an aggressive manner." Ruddell grabbed Ballesteros's left forearm and pulled it through his legs, causing her to fall towards the ground. Given the darkness in the room and her position vis a vis Ruddell, Ballesteros was unable to tell if Ruddell was going to stab her. She yelled, " 'He has my arm' " and struck Ruddell in the groin with her fist twice. Ruddell did not release her hand but instead pulled and tugged on her fingers. Fearing Ruddell was going to break her fingers, Ballesteros grabbed Ruddell's groin area and applied pressure, while ordering him to release her and cease fighting. Garcia, hearing Ballesteros's call for help, ordered Ruddell to release her. When Ruddell failed to comply Garcia punched Ruddell three times in the face with his fist. Deputy Palmieri, hearing commotion in the bedroom, had entered to find Garcia and Ballesteros on the floor struggling with Ruddell. He heard Garcia order, " 'Drop the knife!' " and Ballesteros yell that Ruddell had her arm. Palmieri told Ruddell to give him his left hand, but Ruddell ignored his orders. Afraid that Ruddell would harm the other deputies, Palmieri struck Ruddell several times in his upper back area with his fist. When this action had no effect, Palmieri struck him several more times. As a result of the deputies' combined efforts, Ruddell released Ballesteros and the knife, and the deputies handcuffed Ruddell without further incident.

Meanwhile, upon entering the home Deputy Pulido observed a woman, later identified as Tamiko Juvinall, empty the contents of a plastic baggie into a sink. Pulido attempted to retrieve the dumped material from the sink's drainage pipe. Juvinall's purse, found in the house, contained a glass methamphetamine pipe containing a substance that appeared to be methamphetamine. Pulido also observed two digital scales

4

in the bedroom. Juvinall admitted to Pulido that the purse and pipe were hers. She had emptied the baggie of methamphetamine into the sink at Ruddell's request. After Ruddell had been subdued and was seated in a patrol vehicle, he admitted to Pulido that he had instructed Juvinall to destroy the narcotics; he possessed the scales to weigh methamphetamine he sold; and he had a baggie of methamphetamine inside his bedroom closet. Pulido was unable to find a baggie in the closet.

Ruddell was taken to a hospital for evaluation, and was later released and booked at a sheriff's station.

c. *The defense.*

Defense counsel's declaration explained Ruddell's defense as follows: "[T]he deputies fabricated everything relating to the actions of the defendant. Defendant did not resist the officers; he did not arm himself with or possess a knife; he did not try to flee; he did not possess methamphetamine or related items; and he did not make any incriminating admissions. [¶] At all times during the execution of the search warrant defendant was compliant and cooperative. Despite that, four to five deputies, including Ballesteros, Garcia and Palmieri, began to pummel him by striking him throughout the body while other deputies held him pinned . . . to the ground. Defendant was unable to ascertain the identity of the other deputies since he was focused exclusively on protecting his face. For over five minutes, the group of four to five deputies held him down, struck and kicked him. As defendant was pleading for help, neither [L]t. Murakami, [S]gt. Moreno, [or the other deputies] came to his aid. Instead they conspired to accuse defendant of being in possession of methamphetamine and of resisting the commands of their fellow deputies. [¶] Defendant further denies that he admitted to [D]eputy Pulido that he instructed the woman to destroy the narcotics. In fact, when defendant refused to admit any involvement in the use or sales of methamphetamine, [D]eputy Pulido struck defendant, who was handcuffed behind his back." Although there was a knife on the bedroom floor when the deputies entered the bedroom, Ruddell did not arm himself with it. "A defense to the charges is that the deputies used excessive and unnecessary force and, realizing that they did not have the sufficient evidence to make an arrest, fabricated

5

actions and statements which they attributed to the Defendant in order to justify his arrest." Counsel averred that evidence of other acts of unlawful use of force, dishonesty, or fabrication of evidence would be admissible at trial to show the officers' character traits, habit, and custom to use excessive force and engage in "misconduct of the type alleged."

d. *The trial court's ruling.*

At the hearing on the motion, the trial court opined that the defense had not met its burden to establish good cause for *Pitchess* discovery. Defense counsel responded: "I guess I'm at a loss as to why we haven't—my declaration, I thought, was adequate in that Mr. Ruddell denied that he exhibited any force, that he resisted, that he did anything against the deputies." Counsel explained Ruddell did not contend the officers planted the knife, but the knife was present on the floor the day before the warrant was served, and Ruddell denied arming himself with it to resist the officers; he also denied attempting to flee. Counsel for the sheriff's department argued that in cases where excessive force is alleged, "[i]f the deputies document specifically as to why they engaged in the force, the danger posed to their safety, and the defense responds by saying, well, we deny resisting, I believe pretty much every single *Pitchess* motion would be granted if the threshold were to be that low." The trial court replied that "sometimes a denial will suffice, but given the information in the reports here, I don't think that the denial alone meets the burden, so I'm going to deny the *Pitchess* motion."

2. *Procedure.*

Trial was by jury. Ruddell was convicted of one count of resisting an executive officer, Deputy Garcia (Pen. Code, § 69).[4] The jury further found Ruddell personally used a deadly and dangerous weapon, a knife, in commission of the offense. It acquitted Ruddell of a second count of violating section 69 by resisting Deputy Ballesteros. The trial court suspended imposition of sentence and placed Ruddell on formal probation for

---

[4] All further undesignated statutory references are to the Penal Code.

6

three years.  It imposed a restitution fine, a suspended probation revocation restitution fine, a criminal conviction assessment, and a court operations assessment.  Ruddell appeals.

DISCUSSION

1. *Relevant legal principles.*

On a showing of good cause, a criminal defendant is entitled to discovery of relevant documents or information in the confidential personnel records of a peace officer who is accused of misconduct against the defendant.  (*People v. Gaines* (2009) 46 Cal.4th 172, 179; *People v. Samuels* (2005) 36 Cal.4th 96, 109.)  "To initiate discovery, the defendant must file a motion supported by affidavits showing 'good cause for the discovery,' first by demonstrating the materiality of the information to the pending litigation, and second by 'stating upon reasonable belief' that the police agency has the records or information at issue.  [Citation.]"  (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1019; *Sisson v. Superior Court* (2013) 216 Cal.App.4th 24, 34; *People v. Moreno* (2011) 192 Cal.App.4th 692, 701.)  If a defendant shows good cause, the trial court examines the material sought in camera to determine whether disclosure should be made and discloses "only that information falling within the statutorily defined standards of relevance."  (*Warrick*, at p. 1019; *Moreno*, at p. 701.)

"There is a 'relatively low threshold' for establishing the good cause necessary to compel in camera review by the court.  [Citations.]"  (*People v. Thompson* (2006) 141 Cal.App.4th 1312, 1316; *Warrick v. Superior Court, supra,* 35 Cal.4th at p. 1019; *People v. Moreno, supra,* 192 Cal.App.4th at p. 701.)  To establish good cause, "defense counsel's declaration in support of a *Pitchess* motion must propose a defense or defenses to the pending charges" and articulate how the discovery sought might be admissible or lead to relevant evidence.  (*Warrick*, at p. 1024; *Moreno*, at p. 701.)  The defense must present "a specific factual scenario of officer misconduct that is plausible when read in light of the pertinent documents."  (*Warrick*, at p. 1025; *Thompson*, at p. 1316.)  "A scenario sufficient to establish a plausible factual foundation 'is one that might or could have occurred.  Such a scenario is plausible because it presents an assertion of specific

7

police misconduct that is both internally consistent and supports the defense proposed to the charges.' [Citation.]" (*Thompson*, at p. 1316, italics omitted; *Warrick*, at p. 1026.) Depending on the facts of the case, "the denial of facts described in the police report may establish a plausible factual foundation." (*Thompson*, at p. 1316; *Warrick*, at pp. 1024-1025.) A defendant need not establish that it is reasonably probable his version of events actually occurred, provide corroborating evidence, show that his story is persuasive or credible, or establish a motive for the officer's alleged misconduct. (*Warrick*, at pp. 1025-1026; *People v. Sanderson* (2010) 181 Cal.App.4th 1334, 1340; *Thompson,* at pp. 1316-1317.) Discovery is limited to instances of officer misconduct related to the misconduct asserted by the defendant. (*Warrick*, at p. 1021; *California Highway Patrol v. Superior Court* (2000) 84 Cal.App.4th 1010, 1021; *People v. Hill* (2005) 131 Cal.App.4th 1089, 1096, fn. 7, disapproved on other grounds in *People v. French* (2008) 43 Cal.4th 36, 48, fn. 5.)

Trial courts are vested with broad discretion when ruling on *Pitchess* motions (*Haggerty v. Superior Court* (2004) 117 Cal.App.4th 1079, 1086), and we review a trial court's ruling for abuse. (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 992; *People v. Moreno, supra,* 192 Cal.App.4th at p. 701; *People v. Sanderson, supra,* 181 Cal.App.4th at p. 1339.)

2. *Application here.*

a. *The trial court correctly denied the* <u>*Pitchess*</u> *motions in part.*

The trial court correctly ruled that Ruddell's motion failed to establish good cause for an in camera review of the records of Lieutenant Murakami, Sergeant Moreno, and Deputies Suarez, Lopez, Valles, Cantu, Busch, and Ramirez. There was no allegation any of these officers used excessive force or engaged in dishonesty of any kind. (*People v. Hill, supra,* 131 Cal.App.4th at p. 1098; see generally *Warrick v. Superior Court, supra,* 35 Cal.4th at p. 1026; *People v. Thompson, supra,* 141 Cal.App.4th at p. 1316.) A "showing of good cause must be based on a discovery request which is tailored to the specific officer misconduct that is alleged." (*California Highway Patrol v. Superior Court, supra,* 84 Cal.App.4th at p. 1021.) Thus, good cause is not established where the

8

officers are not alleged to have committed misconduct.  (*People v. Hill, supra,* at p. 1098.)  Indeed, Ruddell does not appear to contend the trial court erred by denying the motion in regard to these officers.

Likewise, there was no good cause for disclosure of complaints related to racial, gender, ethnic, or sexual orientation bias; "coercive conduct"; violation of constitutional rights; or illegal search and seizure.  Ruddell did not allege that Deputies Garcia, Ballesteros or Palmieri committed any misconduct related to these categories, and complaints regarding these matters could not have established a defense at trial.  "A request for information that is irrelevant to the pending charges does not satisfy the specificity requirement."  (*People v. Hill*, *supra,* 131 Cal.App.4th at p. 1096, fn. 7; *Warrick v. Superior Court, supra*, 35 Cal.4th at p. 1021; *People v. Hustead* (1999) 74 Cal.App.4th 410, 416.)  Ruddell's requests for complaints regarding "all acts of aggressive behavior" and "any other evidence of misconduct amounting to moral turpitude" were not supported by good cause in light of their vagueness and overbreadth.

Because Ruddell's opening brief does not aver that the trial court abused its discretion by declining to conduct an in camera review of Deputy Pulido's records, we do not consider whether the motion established good cause as to him.

b. *Ruddell established good cause for an in camera review of the records of Deputies Garcia, Ballesteros, and Palmieri for the use of excessive force and dishonesty.*

The opposite is true, however, insofar as Ruddell's motion sought complaints regarding excessive force and dishonesty against Deputies Garcia, Ballesteros, and Palmieri.  In regard to these officers, Ruddell's motion set forth a specific factual scenario of officer misconduct that is plausible when read in light of the pertinent documents.  (*Warrick v. Superior Court, supra,* 35 Cal.4th at p. 1025.)  The police reports stated that Ruddell resisted arrest, struggled with the officers, and displayed a knife, the conduct that supported the charged crimes.  Defense counsel's declaration in support of the *Pitchess* motion stated that Ruddell did not resist the officers, did not arm himself with a knife, and acceded to the officer's demands; nonetheless, the officers used considerable force against him.  He also denied making the inculpatory statements

9

attributed to him by Deputy Pulido regarding disposal of the drugs, the baggie in the closet, and his use of the scales. This factual scenario provided an internally consistent alternative to that presented in the police reports. (See *People v. Sanderson, supra,* 181 Cal.App.4th at p. 1340 [scenario is plausible when it asserts specific misconduct that is both internally consistent and supports the proposed defense].) Ruddell expressly identified a defense based on this factual scenario: the officers fabricated the claim he resisted and admitted to methamphetamine possession in order to justify their improper use of excessive force. If credited by a jury, this scenario would have established a defense to the charge of resisting an executive officer. Moreover, the evidence requested would likely have been admissible at trial. (See *City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 85-86; *People v. Memro* (1985) 38 Cal.3d 658, 681-682, disapproved on another point in *People v. Gaines, supra,* 46 Cal.4th at p. 181, fn. 2.) Contrary to the People's argument, this showing amounted to more than bald assertions denying the elements of the crime. Ruddell challenged the deputies' account of the incident by providing his own version of events, "thereby making the officers' truthfulness material to the issues in the case." (*Brant v. Superior Court* (2003) 108 Cal.App.4th 100, 108.)

Whether the factual scenario put forth by Ruddell inspired belief is not relevant to the determination of whether an in camera review is required. "To require a criminal defendant to present a *credible* or *believable* factual account of, or a motive for, police misconduct suggests that the trial court's task in assessing a *Pitchess* motion is to weigh or assess the evidence. It is not. A trial court hearing a *Pitchess* motion normally has before it only those documents submitted by the parties, plus whatever factual representations counsel may make in arguing the motion. The trial court does not determine whether a defendant's version of events, with or without corroborating collateral evidence, is persuasive—a task that in many cases would be tantamount to determining whether the defendant is probably innocent or probably guilty." (*Warrick v. Superior Court, supra,* 35 Cal.4th at p. 1026; see also *People v. Sanderson, supra,* 181 Cal.App.4th at p. 1340 [*Pitchess* inquiry does not involve an assessment or weighing

10

of the persuasive value of the evidence; a defendant is entitled to discover relevant information under *Pitchess* even in the absence of a judicial determination that the potential defense is credible or persuasive]; *People v. Johnson* (2004) 118 Cal.App.4th 292, 304.)

Several authorities inform our analysis. In *City of Santa Cruz v. Municipal Court, supra,* 49 Cal.3d 74, the defendant was charged with resisting arrest and exhibiting a knife. He moved for discovery of complaints regarding two arresting officers' use of excessive force. The defendant supported his motion with police reports stating that when he resisted arrest, one of the officers struck him with his fist and both officers then wrestled him to the ground. Defense counsel's declaration in support of the *Pitchess* motion contrarily stated that the officers handcuffed the defendant, threw him to the ground, and stepped on his head, thereby using excessive force, and complaints of similar behavior by the officers would show the officers' propensity to use force in effecting arrests. (*Id.* at pp. 79-80, 85.) The California Supreme Court held the defendant had shown good cause for the requested discovery, reasoning: "Defendant is charged with resisting arrest. [Citation.] The police reports make clear that considerable force was used to effect the arrest. Counsel's declaration asserts that the officers used excessive force 'so as to make said arrest illegal and otherwise improper.' The declaration sets forth, on the basis of information and belief, a specific factual scenario to support that assertion. Counsel avers that she seeks the information relating to prior complaints of excessive force against the arresting officers to 'show a tendency or propensity on the part of the arresting officers[] herein to engage in the use of unlawful and excessive force in the execution of the arrests.' [¶] Viewed in conjunction with the police reports, counsel's averments establish a plausible factual foundation for an allegation of excessive force, put the court on notice that the officers' alleged use of excessive force will likely be an issue at trial, and articulate a valid theory as to how the information sought might be admissible. (See [Evid. Code,] §§ 1103, 1105; *Pitchess v. Superior Court, supra*, 11 Cal.3d at p. 537; *People v. Memro, supra,* 38 Cal.3d at pp. 681-682.) Defendant has plainly demonstrated the materiality of the requested information in satisfaction of

11

section 1043, subdivision (b)." (*City of Santa Cruz*, at pp. 85-86.)

In *People v. Memro, supra,* 38 Cal.3d 658, the defendant was charged with murder after he confessed to three killings. He claimed his confession was coerced and sought complaints relating to the interrogating officers' use of excessive force, aggressive behavior, and violence. Defense counsel's declaration averred that the confession was the result of an illegal arrest, promises of leniency, and threats of violence by the officers, and requested the records to show it was the officers' habit or custom to engage in violent behavior to coerce confessions. (*Id.* at pp. 680-681; see *Brant v. Superior Court, supra,* 108 Cal.App.4th at p. 106.) *Memro* held the defendant had demonstrated good cause because counsel's declaration asserted the confession was coerced, and discovery might lead to admissible evidence that the interrogating officers had the habit or custom of obtaining confessions through the use of excessive force. (*Memro*, at pp. 681-682; *Brant*, at p. 106.)

Similarly, in *Uybungco v. Superior Court* (2008) 163 Cal.App.4th 1043, the defendant was prosecuted for resisting a peace officer and vandalism of a patrol car. Uybungco sought *Pitchess* discovery of complaints related to, inter alia, excessive force and dishonesty. In support of his motion, Uybungco provided a declaration stating that he had not resisted the police and various statements in the police reports (that he cocked his fist, resisted arrest, and knocked the patrol car window out of alignment) were false, and the officers kicked, punched, and pepper sprayed him. The court concluded the "allegations in Uybungco's declaration . . . satisfy the ' "relatively low threshold" ' for in camera review, as they depict a scenario 'that might or could have occurred' and are plausible in that they 'present[ ] an assertion of specific police misconduct that is both internally consistent and supports the defense proposed to the charges.' [Citation.]" (*Id.* at pp. 1049-1050; see also, e.g., *Warrick v. Superior Court, supra,* 35 Cal.4th at p. 1023 ["By denying the factual assertions made in the police report—that he possessed and discarded the cocaine—defendant established 'a reasonable inference that the [reporting] officer may not have been truthful' "]; *Sisson v. Superior Court, supra,* 216 Cal.App.4th at pp. 34-35; *People v. Johnson, supra,* 118 Cal.App.4th at pp. 303-304; *People v.*

12

*Hustead, supra,* 74 Cal.App.4th at p. 418; *Brant v. Superior Court, supra,* 108 Cal.App.4th at p. 108.)

As in these cases, Ruddell's motion provided good cause by setting forth a plausible and specific factual scenario that would have established a defense to the charged crimes.

The People argue Ruddell failed to show good cause "by merely denying the relevant specific facts alleged in the incident reports." But, as our Supreme Court has made clear, under some circumstances, "a simple denial of accusations in the police report" may suffice to establish good cause. (*Garcia v. Superior Court* (2007) 42 Cal.4th 63, 72; *Warrick v. Superior Court, supra,* 35 Cal.4th at pp. 1024-1025.) This is one of those cases. The People also fault Ruddell for failing to provide an alternative version of the facts because he did not sufficiently explain the presence of the knife or Juvinall's statements. But Ruddell denied using the knife against deputies, and explained it was on the floor the day before. While this explanation was rudimentary, the People do not persuasively show that it was insufficient. Similarly, Ruddell denied telling Juvinall to get rid of the methamphetamine; it is unclear what else he might have stated, at the point the *Pitchess* motion was made, to further explain her statements.

Finally, *People v. Thompson, supra,* 141 Cal.App.4th 1312, cited by the People, is distinguishable. In *Thompson,* the defendant was convicted of the sale of cocaine base after selling narcotics to an undercover officer. Thompson sought pretrial *Pitchess* discovery of the records of 11 L.A.P.D. officers who were involved in the undercover operation. The trial court concluded the defendant had failed to establish good cause and denied his motion without conducting an in camera review. (*Id.* at p. 1316.) Its ruling was upheld on appeal. The court recognized that the threshold for *Pitchess* discovery was low, and that under some circumstances the mere denial of facts described in a police report is sufficient to establish a plausible factual foundation. (*Ibid.*) However, in Thompson's case, defense counsel's declaration simply stated that the officers never recovered "buy money" from the defendant, who never offered to sell drugs to the undercover officer; averred that officers saw the defendant and arrested him because he

13

was in an area where they were doing arrests; and, upon discovering his criminal history, attributed drugs already in their possession to him.

*Thompson* held: "This showing is insufficient because it is not internally consistent or complete. We do not reject Thompson's explanation because it lacked credibility, but because it does not present a factual account of the scope of the alleged police misconduct, and does not explain his own actions in a manner that adequately supports his defense. Thompson, through counsel, denied he was in possession of cocaine or received $10 from [the undercover officer]. But he does not state a nonculpable explanation for his presence in an area where drugs were being sold, sufficiently present a factual basis for being singled out by the police, or assert any 'mishandling of the situation' prior to his detention and arrest. Counsel's declaration simply denied the elements of the offense charged." (*People v. Thompson, supra,* 141 Cal.App.4th. at p. 1317.) The court further explained: "Thompson is not asserting that officers planted evidence and falsified a police report. He is asserting that, because he was standing at a particular location, 11 police officers conspired to plant narcotics and recorded money in his possession, and to fabricate virtually all the events preceding and following his arrest." (*Id.* at p. 1318.)

In contrast to *People v. Thompson*, there was an obvious explanation for Ruddell's presence: it was his home. There was also a potential explanation for the alleged police misconduct: according to Ruddell, the officers lied about his actions in order to justify their use of force. Furthermore, Ruddell's version of events was not inherently incompatible with common sense, as was the case in *Thompson*. (See *People v. Thompson, supra,* 141 Cal.App.4th at pp. 1318-1319.)

In sum, in light of the low threshold for obtaining an in camera review of the requested materials (*People v. Moreno, supra,* 192 Cal.App.4th at p. 701), we conclude the trial court erred by denying Ruddell's motion to the extent discussed.

14

c. *Remedy.*

A trial court's erroneous denial of a defendant's *Pitchess* motion is not reversible error per se. (*People v. Gaines, supra,* 46 Cal.4th at p. 176; *People v. Moreno, supra,* 192 Cal.App.4th at p. 703.) Instead, "the failure to disclose relevant information in confidential personnel files, like other discovery errors, is reversible only if there is a reasonable probability of a different result had the information been disclosed." (*Gaines*, at p. 176.) The proper remedy is to conditionally reverse the judgment and remand the matter for an in camera review of the relevant records. (*Gaines*, at pp. 180-181; *Moreno*, at p. 703.) If no relevant information is contained in the officers' records, the trial court is to reinstate the judgment and sentence. (*Gaines*, at p. 181; *Moreno,* at p. 703.) If the trial court determines that relevant discoverable information exists, it must order disclosure, allow Ruddell an opportunity to demonstrate prejudice, and order a new trial if there is a reasonable probability the outcome would have been different had the information been disclosed. (*Gaines,* at pp. 181, 182; *Moreno,* at p. 703.) If Ruddell is unable to show prejudice, the trial court is to reinstate the judgment and sentence. (*Gaines*, at p. 182; *Moreno*, at p. 703.) We therefore remand the case to the trial court for an in camera review of the relevant records.

DISPOSITION

The judgment is reversed with directions to the trial court to conduct an in camera inspection consistent with the opinions expressed herein. If the trial court's inspection on remand reveals no discoverable information, the trial court must reinstate the original judgment and sentence. If the inspection reveals discoverable information, the trial court shall order disclosure of the names, addresses, and telephone numbers of individuals who have witnessed, or have previously filed complaints about, similar misconduct, i.e., the use of excessive force, falsifying police reports, planting evidence, or perjury; allow appellant an opportunity to demonstrate prejudice; and order a new trial if there is a reasonable probability the outcome would have been different if the information had been disclosed. If appellant is unable to demonstrate prejudice, the judgment and sentence must be reinstated.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

KLEIN, P. J.

CROSKEY, J.