Filed 5/2/16  P. v. Hernandez CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FRANCISCO JAVIER HERNANDEZ,<br><br>    Defendant and Appellant. | B262379<br><br>(Los Angeles County<br>Super. Ct. No. PA078689) |

APPEAL from a judgment of the Superior Court of Los Angeles County, David B. Gelfound, Judge.  Affirmed.

Christopher Nalls, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Blythe J. Leszkay and Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Defendant Francisco Javier Hernandez, also known as Javier Francisco Hernandez, challenges the judgment of conviction.  We affirm.

## FACTS

Prior to November 2, 2013, a court ordered defendant to refrain from possessing any firearm.  On November 2, 2013, officers lawfully stopped defendant for driving with a modified exhaust.  Defendant tried to flee.  Several officers assisted in arresting defendant.  Their version and defendant's version of the ensuing events are described in detail below.

### 1. The Events According to Police

On November 2, 2013, Officers Andre Silva and Katherine O'Brien were driving in a marked police vehicle and observed defendant driving a vehicle with a modified exhaust.  Shortly after the officers activated their red lights and siren, defendant stopped.  When he approached the driver side door of defendant's vehicle, Officer Silva noticed an open beer bottle.

Officer Silva asked defendant for his license and registration, and defendant did not answer or comply.  When Silva asked defendant to exit the vehicle, defendant shouted aggressively, initially refusing to exit.  Defendant eventually exited, but he refused to turn around when Silva requested it.  Defendant said, "I'm not giving you my back" and attempted to flee.  Silva was able to stop defendant, but was not able to control him.  Silva pushed defendant onto the hood of defendant's vehicle.  Defendant bit Silva's arm, causing Silva to suffer a crushing, burning sensation.  Defendant and Silva continued to struggle.  Silva pushed defendant's face to the ground, and defendant punched Silva multiple times.

Officer O'Brien called for backup.  When defendant tried to reach into his sweatshirt pocket, O'Brien tried to grab defendant's arm to stop him from reaching into his pocket.  Officers Silva and O'Brien later learned that defendant had an illegal, fully loaded firearm in his pocket.

In the continued struggle between defendant and Officer Silva, defendant "wrapped his hand and his fingers around the back of [Silva's] head and ear and began to

2

put pressure on [Silva's] eye with his [(defendant's)] thumb." Defendant was trying to push Silva's eye in. Defendant was "pushing hard" and was trying to "destroy" Silva's eye. Officer O'Brien saw defendant's fingers in Silva's eye and heard Silva yell, "he's gouging my eye." Silva was able to escape defendant's hold. Silva punched defendant causing defendant's body to shift and his handgun to fall out of his pocket.

Using his left arm, Officer Silva was able to place defendant in a headlock. He observed defendant unsnap Silva's gun holster and try to pull the gun out of the holster. Officer O'Brien heard Silva's holster unsnap. O'Brien yelled at Silva to warn him defendant was trying to take his gun. Silva used his right elbow to push the gun back into the holster. Defendant used his free hand to try to gouge Silva's eye again. He used his thumb to push into Silva's eye. O'Brien was trying to grab defendant's arm. Defendant hit her multiple times as he was flailing his arms and also kicked her.

Sergeant Michael Smith arrived when defendant was trying to retrieve Silva's gun.[1] Sergeant Smith observed Officer Silva trying to push his gun down with his arm. When Sergeant Smith attempted to assist the officers in controlling defendant, defendant kicked Sergeant Smith in the chest.

Officers Steven Smith and Ruben Aguirre responded to Officer O'Brien's call for assistance. When he tried to assist, defendant struck Officer Smith in his left eye. Officer Aguirre used pepper spray and his collapsible baton. Together the officers eventually were able to place defendant in restraints.

Officer Silva suffered bruises in his arm where defendant had bitten him. He had two sprained wrists and numerous scrapes. Officer O'Brien suffered abrasions and multiple sprains. Officer Smith had a small contusion on his left eye.

---

[1] Brandon Payne was a civilian passenger in Sergeant Smith's vehicle. He observed defendant kick Sergeant Smith and overheard an officer scream that defendant was trying to take Silva's gun.

*2. The Events According to Defendant and Witnesses Who Testified on His Behalf*

Defendant testified that on November 2, 2013, he was stopped by officers as he was driving to his brother's house. He admitted that he tried to flee, explaining that he had a gun in his pocket and did not want to be incarcerated. Defendant knew he was not permitted to poses a gun and knew the gun was loaded.

Defendant testified that he believed Officer Silva was going to kill him and that he needed to defend himself. He bit Silva after Silva was choking him. He did not want to hurt Silva but wanted Silva to release him. Defendant admitted to touching officer Silva's eye, but claimed his goal was for Silva to release him from a chokehold. Defendant testified: "I just touched it. And he let me go because—to me it seemed like he—he knew that I could . . . hurt him. So he let me go. I'm sure nobody wants their eye to be hurt."

Defendant testified he felt a bunch of officers on top of him. He was unable to defend himself. Defendant denied reaching for Officer Silva's gun. He also denied trying to reach for the gun in his pocket. If he kicked anyone, it was in an effort to protect himself. Defendant testified that he "gave them [his] hands, put [his] hands behind [his] back and they wouldn't cuff [him]." He testified he did not intend to kill the officers.

Defendant's girlfriend Maria DeFlores arrived in the midst of the officers' attempt to restrain defendant. She believed the officers used excessive force and described defendant as standing with his arms extended. She testified that defendant was neither resisting arrest nor fighting with the officers. Yesenia Guevara, defendant's brother's girlfriend, also testified the officers used excessive force. Two additional eyewitnesses testified that they observed officers hitting defendant.

**PROCEDURE**

*1. Amended Information*

Defendant was charged with two counts of attempted murder of a peace officer (Officers Silva and O'Brien), five counts of assault upon a peace officer by force likely to produce great bodily injury (Officers Silva, O'Brien, Aguirre, Smith & Sergeant Smith),

4

carrying an unregistered loaded handgun, attempted removal of Silva's firearm, unlawful possession of a firearm in violation of his probation conditions, and assault with intent to commit mayhem.

## 2. *Pretrial Discovery*

Before trial, defendant sought discovery of police officer personnel records of Officers Silva, O'Brien, Aguirre, Smith and Sergeant Smith. Defendant's attorney included a declaration stating that the information was necessary because the officers and Sergeant Smith "were not assaulted by Mr. Hernandez, who in turn did not reach for Officer Silva's gun, that they deliberately fabricated that fact in an effort to justify and explain any complaints of excessive force or police brutality upon the person of Mr. Hernandez." Counsel's declaration contrasted this statement with Silva's preliminary hearing testimony describing defendant's conduct. Counsel's declaration did not identify specific acts of officer force against defendant, but instead emphasized that Silva may have lied in his preliminary hearing testimony.

The court held a hearing on defendant's motion. The court asked defense counsel for "more clarification on what you are actually seeking here." The court stated: "It appears that it is a claim for false reporting as to the reporting officers. If that's the category, false reporting as to the reporting officers, false testimony under oath as to Officer Silva, and possible false reporting as to Sergeant Smith, who also prepared a report, the court's indicated will be to grant on those grounds as to those officers."

Defense counsel agreed that he was seeking information on false reporting and added, "[i]n addition, maybe [the] allegation of excessive force." The court suggested there may need to be more information if defendant were seeking discovery on excessive force. The court provided defense counsel additional time to prepare, and when the case was recalled, defense counsel stated that he submitted. Defense counsel did not argue that there was a need for evidence related to complaints of excessive force.

The trial court found good cause for discovery of officer personnel files as to Officer Silva and Sergeant Smith for false reporting. After an in camera review of the personnel records, the court found no responsive documents.

5

### 3. *Jury Instruction on Assault with Intent to Commit Mayhem*

Jurors were instructed that defendant was charged with assault with intent to commit mayhem. Jurors further were instructed that the People must prove "[w]hen the defendant acted, he intended to commit mayhem. [¶] The defendant intended to commit mayhem if he intended to unlawfully and maliciously: [¶] Put out someone's eye or injure someone's eye in a way that would so significantly reduce his ability to see that the eye would be useless for the purpose of ordinary sight. [¶] Someone commits an act *willfully* when he or she does it willingly or on purpose. [¶] Someone acts *maliciously* when he or she intentionally does a wrongful act or when he or she acts with the unlawful intent to annoy or injure someone else."

### 4. *Defendant's Convictions*

Jurors found defendant not guilty of the attempted murders. He was found not guilty of assault with force likely to produce great bodily injury on Sergeant Smith. He was convicted of the remaining counts.

The trial court sentenced defendant to a total prison term of 10 years. This appeal followed.

## DISCUSSION

### 1. *No Error in Applying* Pitchess

Defendant argues that the trial court should have granted his *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*) motion as to Officers O'Brien, Aguirre, and Smith. Defendant argues the court abused its discretion in denying the motion with respect to the other officers. Defendant also requests this court review the in camera *Pitchess* hearing with respect to Officer Silva and Sergeant Smith. As we shall explain, we find no error.

### a. **No Error in Granting Motion Only As to Officer Silva and Sergeant Smith**

On appeal, defendant demonstrates no abuse of discretion in denying discovery as to officers O'Brien, Aguirre, and Smith. (*Uybungco v. Superior* Court (2008) 163 Cal.App.4th 1043, 1049 ["We review a trial court's ruling on a *Pitchess* motion for abuse of discretion."].)

6

*Pitchess, supra*, 11 Cal.3d 531 and its progeny establish a scheme for balancing a criminal defendant's due process right to a fair trial and a police officer's privacy right to maintaining the confidentiality of his or her employment file. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1226.) To obtain discovery of police officers' employment files "the information sought must be requested with sufficient specificity to preclude the possibility of a defendant simply casting about for any helpful information . . . ." (*Ibid.*, citation omitted.) Only evidence that is similar to the alleged misconduct is discoverable. (*California Highway Patrol v. Superior Court* (2000) 84 Cal.App.4th 1010, 1020.) Further, to show good cause for discovery, a *Pitchess* motion must include "'[a]ffidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that the governmental agency identified has the records or information from the records.'" (*People v. Mooc*, at p. 1226.) Good cause requires a "'specific factual scenario' which establishes a 'plausible factual foundation' for the allegations of officer misconduct committed in connection with [the] defendant." (*California Highway Patrol*, at p. 1020.) "A showing of good cause is measured by 'relatively relaxed standards' that serve to 'insure the production' for trial court review of 'all potentially relevant documents.'" (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1016.)

Here, defendant set forth no allegations that Officers O'Brien, Smith, and Aguirre committed misconduct in connection with defendant. Counsel's declaration attached to his motion identified only Officer Silva's testimony and stated that it was "deliberately fabricated." Counsel's statement of "maybe . . . excessive force" at the hearing failed to set forth any explanation of how the information being sought would support his defense or impeach the officers. (See *Warrick v. Superior Court, supra*, 35 Cal.4th at p. 1021; *People v. Thompson* (2006) 141 Cal.App.4th 1312, 1317.) Stated otherwise, the factual scenario outlined by counsel did not support discovery of the personnel records of Officers O'Brien, Aguirre or Smith. (See *Warrick v. Superior Court*, at p. 1025 [counsel's affidavit "must also describe a factual scenario supporting the claimed officer

7

misconduct"].) Defendant therefore fails to demonstrate the trial court abused its discretion in limiting discovery to Officer Silva and Sergeant Smith.

**b. No Error in Finding No Responsive Discovery**

Defendant requests this court review the transcript of the in camera *Pitchess* hearing. In response to defendant's request, we have independently reviewed the sealed transcript of the trial court's in camera hearing. We conclude the trial court did not abuse its discretion in finding no responsive documents.

***2. No Instructional Error***

Defendant next argues that the trial court should have sua sponte instructed jurors on simple assault as a lesser included offense of assault with intent to commit mayhem.[2] A trial court has a sua sponte duty "to instruct fully on all lesser necessarily included offenses supported by the evidence." (*People v. Breverman* (1998) 19 Cal.4th 142, 148-149.) "[A] trial court errs if it fails to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence. On the other hand, the court is not obliged to instruct on theories that have no such evidentiary support." (*Id.* at p. 162; see *People v. Campbell* (2015) 233 Cal.App.4th 148, 162.)

Although assault is a lesser included offense of assault with intent to commit mayhem, no substantial evidence supported an instruction on the lesser offense. (*People v. De Angelis* (1979) 97 Cal.App.3d 837, 841.) Importantly, defendant admitted that in touching Officer Silva's eye he "sent some kind of message to the officer that [he] better let go of this guy [(defendant)] or he [(defendant)] may really hurt me." Defendant further testified that Silva let go because "he knew that I could . . . hurt him. . . . I'm sure nobody wants their eye to be hurt." This testimony showed that defendant willingly and

---

[2] Penal Code section 203 provides: "Every person who unlawfully and maliciously deprives a human being of a member of his body, or disables, disfigures, or renders it useless, or cuts or disables the tongue, or puts out an eye, or slits the nose, ear, or lip, is guilty of mayhem." Jurors were instructed defendant intended to commit mayhem "if he intended to unlawfully and maliciously: [¶] Put out someone's eye or injure someone's eye in a way that would so significantly reduce his ability to see that the eye would be useless for the purpose of ordinary sight."

on purpose pushed on Silva's eye in a manner showing he could seriously hurt him. The other evidence was consistent. Silva testified that defendant intended to "push my eye in or blow it out." Officer O'Brien also confirmed that defendant was pushing on Silva's eye and she heard him yell that defendant was trying to gauge his eye. Additionally, defendant pushed in Silva's eye more than once, demonstrating that he intended to injure Silva's eye. Further, defendant repeatedly used force when he bit and punched Silva. Defendant does not show an instruction on assault was warranted.

Even assuming the trial court should have instructed jurors on assault, the failure to do so was harmless. No evidence supported the conclusion that defendant as guilty of only a simple assault. Therefore, contrary to defendant's argument, there was no reasonable chance a properly instructed jury would have found him guilty of only the lesser offense.

## DISPOSITION

The judgment is affirmed.

FLIER, J.

WE CONCUR:

BIGELOW, P. J.

GRIMES, J.

9